WILLARD MAAS, APPELLEE, V. A. W. SCOBODA, DOING BUSINESS AS NORFOLK FARM EQUIPMENT COMPANY, APPELLANT.

195 N. W. 2d 491

Filed March 17, 1972. No. 38112.

190

Deutsch & Hagen and Thomas H. DeLay, for appellant.

Hutton, Hutton & Garden, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This is an action by Willard Maas, appellee, to rescind or revoke the purchase of a high moisture silo and equipment, for the reason that the appellant, A. W. Scoboda, doing business as Norfolk Farm Equipment Company, was unable to make the silo operate to the satisfaction of appellee. The trial court granted rescission. We affirm.

Appellee operates a farm in Wayne county. During the summer of 1966, he became interested in a "Fiber-Tron Crop Savor," a high moisture grain storage silo, for his farm. He visited with the appellant about the equipment and was shown a silo in operation. He entered into a contract with the appellant, conditioned upon a 1-year warranty of satisfaction. The contract, so far as material herein, is for a "Fiber-Tron Crop Savor" sweep arm auger unloader and motors for a cash sale price of $5,157. The appellee was to furnish the Ready-Mixed concrete and the sand for the foundation and provide for the wiring for the motors. The contract had the following provision: "one year warranty of customer satisfaction," which was inserted as an inducement to purchase. The contract is dated September 15, 1966.

After the silo was constructed in October of 1966, appellee filled it with 9,000 bushels of corn from his fields. He had the corn tested on three different occasions and the moisture content ranged from 22 percent to 24½ percent. He had been instructed not to fill the silo with corn with a moisture content of over 28 percent or under 20 percent. Representatives of the appellant were present

at the time the silo was filled. Sometime in February 1967, appellee opened the silo to remove corn for livestock feed. In attempting to remove corn, he encountered several problems. To put appellee's difficulties in perspective, we summarize them from his testimony. The motor blew approximately 70 fuses between February and August. When the fuses on the motor blew, appellee was required to drain the corn from the augers and to replace the fuses in order to start the motor. This was done by hand. The horizontal interior building auger clogged on occasions. The silo required a daily water drainage of 5 to 10 gallons. The outside vertical auger could deliver only a portion of the corn so the corn load had to be split by having the cleanout opened, and half the corn shoveled by hand. The interior upper sweep arm broke twice, and a new one had to be installed. The interior upper sweep arm motor control box, which was wired at the factory, broke, and appellee was required to spend 2 days removing corn from the portion of the silo to permit an electrician to gain access to repair the broken wire. This was done at appellee's own expense because appellant refused to do it on the assumption that the defect was in the wiring installed by the appellee's electrician, which was not the case. The upper sweep arm failed to dig into the corn from the top, requiring the appellee or his employees to climb inside the silo and remove 3,000 bushels of corn by hand. As a result of the defects in the silo, several hundred bushels of corn completely spoiled, approximately 2 or 3 hundred bushels of which were in the silo at the time of this action.

The appellee complained to the appellant when he began experiencing difficulties, but continued to use the equipment in an attempt to obtain satisfactory operation. Appellant testified he knew appellee was experiencing problems with blowing fuses, the upper sweep auger, with moisture in the corn, and with the wiring.

Appellant also admitted that 11 other such silos sold by him had unsatisfactory upper sweep augers. Sometime in August of 1967, appellee verbally advised the appellant that he was dissatisfied with the equipment and requested return of the purchase price. On August 17, 1967, appellee, through his attorney, gave notice to the appellant that he was dissatisfied with the equipment, was invoking his right to insist upon the 1-year warranty of customer satisfaction, and was requesting appellant to forthwith remove the structure from his premises and repay the money he had paid for the equipment.

Appellant sets out five assignments of error but in his brief argues but one of them: That the appellee, after giving notice of rescission or revocation of acceptance for breach of warranty, waived his right to rescind and revoke by subsequently exercising dominion over the silo. Appellant premises his position on the following cross-examination testimony: "Q After you turned them down on the five horse motor you turned them down on the double sweep arm installation, you then had your lawyer write this letter, Exhibit 2, didn't you? A Yes. Q And you continued to use this equipment after that time? A Yes * * * Q (By Mr. Deutsch) To summarize on that point you continued to use it until the 13th of September but you still had some of your product in that bin do you not to this day? A That spoiled corn, yes. Q You never cleaned it out? A No, I did not. Q How many bushels have you got in there now? A Between two and three hundred bushel."

At the time appellee demanded the removal of the silo from his premises, there may have been as much as 3,000 bushels of spoiled or spoiling corn in the silo. By September 13, 1970, 2 days before the warranty would expire, appellee had removed all but the 2 or 3 hundred bushels of spoiled corn which still remained in the structure at the time of trial.

This is not an action to recover damages for breach

of warranty but rather is one to rescind or revoke the sale of the silo and recover back the purchase price as well as the installation expense incurred under the contract. Under section 2-601 of the Uniform Commercial Code a buyer is given a right to reject the whole if the goods fail in any respect to conform to the contract. In rescission, the law implies the revesting of the property in the seller and requires the repayment of the purchase price to the buyer.

The remedy available was under the controlling terms of the specific contract: "one year warranty of customer satisfaction." This is referred to as a satisfaction clause which is the subject of an Annotation at 86 A. L. R. 2d at p. 203, from which we quote the following: "In cases involving contracts for the sale of goods subject to their being satisfactory to the buyer, there are two general rules regarding the test of the buyer's satisfaction: (1) the rule that the test of the buyer's satisfaction is his own personal judgment, to which a majority of courts add the qualification that the buyer's personal judgment must be exercised in good faith; and (2) the reasonable man rule that the buyer is legally bound to be satisfied with the goods if a reasonable man would be satisfied with them."

It is appellant's position that when appellee gave notice of rescission, it was his responsibility to place the appellant in status quo as far as possible, and to thereafter hold the silo as a bailee, and that his subsequent use or exercise of dominion over it was a waiver of the right of rescission. The general rule may be summarized as follows: After rescission any use of the property by the buyer for his own benefit or convenience will waive the right to rescind. See Annotation, 41 A. L. R. 2d 1173. That rule, however, is not applicable to the facts herein.

Section 2-602 of the Uniform Commercial Code, requires a buyer's rejection to be made within a reasonable

time. This provision is not applicable herein because appellee by contract had 1 year to determine if the silo would be satisfactory for his purposes. In this state he would be expected to make a good faith attempt to adapt it to those purposes. We determine the following rule to be applicable herein: Under the provisions of a contract for the purchase of a silo with a 1-year warranty of customer satisfaction the buyer's opinion or decision must be made with entire good faith and not captiously or capriciously, and whether he so acts is a question of fact for the jury. Adapted from Melson v. Turner, 125 Neb. 603, 251 N. W. 172.

The law regards parties as being competent to contract as they see fit with respect to the satisfactory character of equipment sold and the seller assumes the hazard of rendering performance according to the terms of the contract.

The record indicates appellee made a diligent effort to obtain satisfactory performance from the equipment, and gave the appellant sufficient opportunity to make it perform satisfactorily. Appellant declined to do anything about the defective wiring. There was breaking of the upper sweep arm shaft, welding, replacement, constant failure of the augers to work, and wet corn in a silo supposedly designed to prevent excessive moisture. At the time of rescission, appellee had 3,000 bushels of corn still in the silo. From February to the date of rescission, appellee experienced considerable difficulty removing 6,000 of the 9,000 bushels he had put in the silo the preceding fall. On the record, no reasonable man could say that appellee had not given the equipment a fair trial. Appellee's rescission was based on reasonable grounds. The trial court properly found that the dissatisfaction expressed by appellee was an honest and a good faith judgment.

The only use of the silo after rescission was to remove the balance of the corn which, except for 2 or 3 hundred

bushels of spoiled corn, was accomplished within the warranty period. This is not a use of the equipment but rather necessary preparation for its removal by the appellant. Appellee, at the time of the rescission, requested the appellant to remove the equipment from appellee's premises. Appellant failed to do so, and contested appellee's right to rescind. The silo was set up by bolting sections together, and it undoubtedly will be removed in the same manner. If appellant had recognized appellee's right to rescind and had taken steps to remove the silo, the 3,000 bushels of corn could have been much more expeditiously removed from it. Under the facts of this case, the law of De Minimis Non Curat Lex is applicable to the small quantity of spoiled corn which remained in the silo after the expiration of the year. We do not consider this to be a sufficient use of the silo within the rule to waive the right of rescission.

The judgment is affirmed.

AFFIRMED.