FRANKLIN QUILTING COMPANY, INC. *v.*
BENJAMIN ORFALY
(2291)

TESTO, HULL and DUPONT, Js.

Argued December 1, 1983—decision released February 7, 1984

*Robert E. Quish,* for the appellant (defendant).

*Stuart A. Margolis,* with whom, on the brief, was *Jonathan J. Einhorn,* for the appellee (plaintiff).

TESTO, J. The plaintiff, a manufacturer of quilted fabrics, and the defendant, a dealer in used quilting machines, entered into an agreement whereby the defendant was to sell to the plaintiff two rebuilt quilting machines for $10,000 each. The agreement did not state that time was of the essence, but delivery was to be in March, 1980. The machines were to be delivered in "prime operating condition," and comply with standards set forth by the occupational safety and health administration (OSHA). The agreement also provided that the defendant would come to the plaintiff's place of business after delivery to "set up" the machines. The plaintiff made a deposit of $5000 on these machines.

The machines were not delivered until June 6, 1980. On June 9, the plaintiff's president notified the defendant that some vital parts of the machines were missing and that the defendant had failed to comply with the particular specifications regarding the utilization of "Pathe" parts. Shortly thereafter, payment was stopped on the check for $10,000 which the plaintiff had given the defendant upon delivery. In a telephone conversation on June 16, the plaintiff informed the defendant that it no longer wanted the machinery.

The plaintiff then commenced this action for rescission of the contract and for damages. Thereafter, the plaintiff contacted the defendant by letter for instructions for the disposition of the machines. Upon the defendant's silence, the plaintiff sold the machines for $5000. The case was tried to the court which ruled in favor of the plaintiff, rescinding the contract and

awarding the plaintiff $700 to cover shipping costs. From that decision, the defendant has appealed.[1]

The defendant assigns as error the trial court's decision to rescind the contract and award the plaintiff incidental damages in the amount of $700.[2]

Because the contract between the parties was a contract for the sale of goods, the law governing this transaction is to be found in article 2 of the Uniform Commercial Code (UCC). General Statutes §§ 42a-2-101 through 42a-2-725; *Plateq Corporation* v. *Machlett Laboratories, Inc.*, 189 Conn. 433, 436–37, 456 A.2d 786 (1983); *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, 184 Conn. 10, 13, 441 A.2d 43 (1981). A buyer may rightfully reject, in whole or in part, an improper delivery "if the goods or the tender of delivery fail in any respect to conform to the contract . . . ."[3] General Statutes § 42a-2-601. Under the UCC, "[r]ejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." General Statutes § 42a-2-602 (1); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 271, 439 A.2d 314 (1981). The buyer, however, may accept the goods even if they are nonconforming and pay for them; General Statutes § 42a-2-607 (1) and (4); or he may seasonably revoke his acceptance. General Statutes § 42a-2-608.

It is against these legal principles that the defendant's claim of error is tested. The defendant challenges the trial court's conclusions rescinding the contract and awarding incidental damages. Our review of such

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] The defendant's second claim of error was withdrawn.

[3] The interpretation of the "perfect tender rule" requires a substantial nonconformity to the contract before a buyer may rightfully reject the goods. White & Summers, Uniform Commercial Code (2d Ed.) § 8-3.

claims is limited to a determination of whether the decision of the trial court is clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The evidence at trial indicated that the machines had numerous defects and would have to be rebuilt to conform to the contract. The plaintiff notified the defendant of specific defects in the machines shortly after their delivery. They included, inter alia: (1) no aprons; (2) no feed rollers; (3) no top takeaway; (4) no lollipops; (5) no sticks; (6) no shuttles; (7) not converted to a Pathe machine; (8) no cloth bars or brackets; (9) no ratchet pin cam; (10) no guards or belts; (11) not up to OSHA standards; and (12) missing cover and gears. The plaintiff's expert witness testified as to why each of these nonconformities constituted a material noncompliance with the agreement. The defendant reassured the plaintiff that he would attend to these defects upon his visit to the plaintiff's premises to set up the machines. He, however, did not take any immediate actions to correct these defects. The plaintiff additionally paid $700 for the shipment of the machines to its place of business.[4] Under the UCC, the buyer is entitled to "[i]ncidental damages resulting from the seller's breach [which] include expenses reasonably incurred in . . . transportation and care and custody of goods rightfully rejected . . . ." General Statutes § 42a-2-715 (1). We find the trial court's conclusion to be legally and logically correct and amply supported by the evidence.

There is no error.

In this opinion the other judges concurred.

---

[4] The subsequent sale of the machines for $5000 by the plaintiff reimbursed it for the amount of the deposit; and therefore, the plaintiff is not claiming this amount as part of its damages.