**D.P. TECHNOLOGY CORP.**

v.

**SHERWOOD TOOL, INC.**

**Civ. No. H–90–355(AHN).**

United States District Court,
D. Connecticut.

Nov. 29, 1990.

H. Kenneyd Hudner, Everett E. Newton, Murtha, Cullina, Richter and Pinney, Hartford, Conn., for plaintiff.

Darcy McGraw, Carolyn W. Kone, Brenner, Saltzman, Wallman and Goldman, New Haven, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

NEVAS, District Judge.

In this action based on diversity jurisdiction, the plaintiff seller, D.P. Technology ("DPT"), a California corporation, sues the defendant buyer, Sherwood Tool, Inc. ("Sherwood") a Connecticut corporation, alleging a breach of contract for the purchase and sale of a computer system. Now pending is the defendant's motion to dismiss, pursuant to Rule 12(b)(6), Fed.R. Civ.P., for failure to state a claim upon which relief can be granted. For the reasons that follow, the defendant's motion to dismiss is denied.

### I.

#### A.

■ The facts of this case can be easily summarized. On January 24, 1989, the defendant entered into a written contract to purchase a computer system, including hardware, software, installation and training, from the plaintiff. The complaint alleges that the computer system was "specifically" designed for the defendant and is not readily marketable.[1] The contract[2], executed on January 24, 1989, incorporates the delivery term set forth in the seller's Amended Letter of January 17, 1989 stating that the computer system would be delivered within ten to twelve weeks. The delivery period specified in the contract ended on April 18, 1989. The software was delivered on April 12, 1989 and the hardware was delivered on May 4, 1989. On May 9, 1989, the defendant returned the merchandise to the plaintiff, and has since refused payment for both the software and the hardware. Thus, the plaintiff alleges that the defendant breached the contract by refusing to accept delivery of the goods covered by the contract while the defendant argues that it was rather the plaintiff who breached the contract by failing to make a timely delivery.

#### B.

■ In considering a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted, a court is under a duty to determine whether the plaintiff has a valid claim under any possible theory. A motion to dismiss should not be granted "unless it appears beyond a doubt" that the plaintiff cannot support a claim that would entitle it to relief, *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). The pleader, however, must set forth sufficient information to outline the elements of the claim or to permit inferences to be drawn that these elements exist. In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. 5A C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 1364, 475–80 (1990). Dismissal is justified only when the allegations of the complaint itself clearly demonstrate that the plaintiff does not have a claim. For purposes of a motion to dismiss, the court must take the allegations of the complaint as true, *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965), and construe all reasonable inferences to be drawn from those facts in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

#### C.

■ A federal court sitting in diversity must be mindful that it follow the law determined by the highest court of the state whose law is applicable to resolution of the dispute. *Plummer v. Lederle Laboratories*, 819 F.2d 349, 355 (2d Cir.), *cert.*

---

1. Article 2 applies to all contracts for the sale of goods, whether those goods be existing at the time of sale or whether they are to be specially manufactured. *Bead Chain Mfg. Co. v. Saxton Prods., Inc.*, 183 Conn. 266, 270, 439 A.2d 314, 317 (1981) (Peters, J.).

2. The contract incorporates three writings attached to the complaint as exhibits: the seller's Quotation 5005, dated January 17, 1989; the seller's Amended Letter, dated January 24, 1989; and the buyer's final sale order, dated January 24, 1989.

*denied,* 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). When that state court has not directly ruled on the issue under consideration, the federal court " 'must make an estimate of what the state's highest court would rule to be its law.' " *Carpentino v. Transp. Ins. Co.,* 609 F.Supp. 556, 560 (D.Conn.1985) (Zampano, J.) (quoting *Cunninghame v. Equitable Life Assurance Soc'y of United States,* 652 F.2d 306, 308 (2d Cir.1981)). *See also Plummer,* 819 F.2d at 355. In calculating this estimate, the federal court may consider all data the high court would use in reaching its decision. *Doyle v. St. Paul Fire & Marine Ins. Co.,* 583 F.Supp. 554, 555 (D.Conn.1984) (Dorsey, J.). Thus, the federal court may discern the forum state's law by examining relevant decisions from the forum state's inferior courts, decisions from sister states, federal decisions, and the general weight and trend of authority.[3]

## II.

Because the contract between the parties was a contract for the sale of goods,[4] the law governing this transaction is to be found in Article 2 of the Uniform Commercial Code ("UCC"); Conn.Gen.Stat. §§ 42a–2–101 *et seq.* In its motion to dismiss, the defendant argues that the plaintiff fails to state a claim upon which relief can be granted because the plaintiff breached the contract which provided for a delivery period of ten to twelve weeks from the date of the order, January 24, 1989. Since the delivery period ended on April 18, 1989, the May 4 hardware delivery was 16 days late. The defendant contends that because the plaintiff delivered the hardware after the contractual deadline, the late delivery entitled the defendant to reject delivery, since a seller is required to tender goods in conformance with the terms set forth in a contract. U.C.C. § 2–301; Conn.Gen.Stat. § 42a–2–301.

In its memorandum in opposition, the plaintiff contends that the defendant waived the original delivery schedule. The plaintiff points to its allegation in the com-

---

**3.** Neither party has addressed the question of the applicable state law. Instead, the parties ostensibly assume that Connecticut law applies. As jurisdiction for this claim is based on diversity jurisdiction, this court must apply the substantive law of Connecticut, *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including Connecticut's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). In the record before the court, the only factual ties to a state other than Connecticut is the California corporate citizenship of the plaintiff seller and its use of Camarillo as its principal place of business. In contract actions, Connecticut courts traditionally look to the law of the place of execution, but if the contract is to have its operative effect or place of performance in a jurisdiction other than the place where it was entered into, the law of the place of operative effect or performance governs its validity and construction. *Whitfield v. Empire Mut. Ins. Co.,* 167 Conn. 499, 506, 356 A.2d 139 (1975); *Breen v. Aetna Casualty and Sur. Co.,* 153 Conn. 633, 637, 220 A.2d 254 (1966); *Jenkins v. Indem. Ins. Co.,* 152 Conn. 249, 253–54, 205 A.2d 780 (1964); *Graham v. Wilkins,* 145 Conn. 34, 39, 138 A.2d 705 (1958); *Craig & Co., Ltd. v. Uncas Paperboard Co.,* 104 Conn. 559, 564–67, 133 A. 673 (1926); *Levy v. Daniels' U–Drive Auto Renting Co.,* 108 Conn. 333, 338, 143 A. 163 (1928). *See also Clee v. Remillard Bldg., Inc.,* 649 F.Supp. 1127, 1131 (D.Conn.1986) (Nevas, J.); *Reed v. Signode Corp.,* 652 F.Supp. 129, 136

(D.Conn.1986) (Nevas, J.); *Schirm v. Auclair,* 597 F.Supp. 202 (D.Conn.1984) (Zampano, J.); *Standard Structural Steel Co. v. Bethlehem Steel Corp.,* 597 F.Supp. 164, 182 (D.Conn.1984) (Clarie, J.).

In the instant case, the contract comprised three writings: two letters from the seller, signed in California, and the letter of acceptance from the buyer, executed in Connecticut. Since the letter from the buyer stated "Ship it", it was arguably the letter of acceptance. Thus the contract under this interpretation was executed in Connecticut (the letter of acceptance by the buyer dated January 24, 1989). But even if it is unclear as to where the contract was executed, the contract was to have its place of operative effect or performance in Connecticut, since the computer system was to be delivered to and used in Connecticut. Thus, Connecticut law governs resolution of the instant dispute.

**4.** Computer systems, including software, have been interpreted to be goods rather than services and thus subject to the Uniform Commercial Code. *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 742–45 (2d Cir.1979); *RRX Ind., Inc. v. Lab–Con, Inc.,* 772 F.2d 543, 546 (9th Cir.1985); *Chatlos Systems, Inc. v. Nat'l Cash Register Corp.,* 479 F.Supp. 738, 742 (D.N.J. 1979); *contra Data Processing Serv., Inc. v. Smith Oil Corp.,* 492 N.E.2d 314, 318–20 (Ind. App.1986); *Prospero Assocs. v. Redactron Corp.,* 682 P.2d 1193 (Colo.App.) (1983).

plaint that it designed and developed the computer system pursuant to the contract, Complaint ¶ 3–6. and argues that, in designing and developing a "specifically designed" computer system, consultations with the defendant took place which resulted in adjustment of the delivery schedule, and that the defendant waived the 10–12 week delivery requirement. In *Bradford Novelty Co. v. Technomatic*, 142 Conn. 166, 170, 112 A.2d 214, 216 (1955) (pre-Code), where the buyer acquiesced to a delay in delivery, the court found that the buyer "by its conduct, waived its right to strict compliance with the provisions of the contract as to time of performance." In the instant case, however, the plaintiff failed to allege its waiver claim in the complaint. Consequently, the defendant's motion to dismiss cannot be denied on a claim of waiver.

The plaintiff also states that even if the computers were delivered late, the buyer could not reject the goods pursuant to Conn.Gen.Stat. § 42a–2–602 because the parties had an installment contract. The plaintiff contends that the contract was an installment one, which authorizes the delivery of goods in separate lots to be separately accepted, as illustrated by the separate deliveries of software and hardware. A buyer may reject an installment only if the non-conformity substantially impairs the value of the goods. Conn.Gen.Stat. § 42a–2–612(2)–(3). The defendant has not asserted that the late delivery substantially reduced the computer system's value. Since the allegations in the complaint must be construed in favor of the nonmoving party in a motion to dismiss, if an installment contract was alleged, then UCC Section 2–601 would be superseded by UCC Section 2–612. However, the complaint lacks any reference to an installment contract. Therefore, the defendant's motion to dismiss cannot be denied on the grounds that there was an installment contract.

In addition, the plaintiff argues that the defendant relies on the perfect tender rule, allowing buyers to reject for any nonconformity with the contract. Plaintiff points out that the defendant has not cited one case in which a buyer rejected goods solely because of a late delivery, and that the doctrine of "perfect tender" has been roundly criticized. While it is true that the perfect tender rule has been criticized by scholars principally because it allowed a dishonest buyer to avoid an unfavorable contract on the basis of an insubstantial defect in the seller's tender, *Ramirez v. Autosport*, 88 N.J. 277, 283–85, 440 A.2d 1345, 1348–49 (1982); *Moulton Cavity & Mold, Inc. v. Lyn–Flex Indus., Inc.*, 396 A.2d 1024, 1027 (Me.1979); E. Peters, *Commercial Transactions* 33–37 (1971) (even before enactment of the UCC, the perfect tender rule was in decline), the basic tender provision of the Uniform Commercial Code continued the perfect tender policy developed by the common law and embodied in the Uniform Sales Act. Section 2–601 states that with certain exceptions [5], the buyer has the right to reject "if the goods or the tender of delivery fail *in any respect* to conform to the contract." (emphasis supplied). Conn.Gen.Stat. § 42a–2–601. The courts that have considered the issue have agreed that the perfect tender rule has survived the enactment of the Code. *See, e.g., Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017, 1024 (2d Cir. 1978) ("There is no doubt that the perfect tender rule applies to measure the buyer's right of initial rejection of goods under UCC section 2–601."); *Capitol Dodge Sales, Inc. v. Northern Concrete Pipe, Inc.*, 131 Mich.App. 149, 158, 346 N.W.2d 535, 539 (1983) (adoption of 2–601 creates a perfect tender rule replacing pre-Code cases defining performance of a sales contract in terms of substantial compliance); *Texas Imports v. Allday*, 649 S.W.2d 730, 737 (Tex.App.1983) (doctrine of substantial

5. *See, e.g.,* sections 2–508 (seller's limited right to cure defects in tender), 2–608 (buyer's limited right to revoke acceptance) and 2–612 (buyer's limited right to reject nonconforming tender under installment contract). *See also* Calamari and Perillo, *Contracts,* (2d Ed.1972) at 413 n. 81

("It has been suggested that these exceptions in fact represent a new rule, supplanting the traditional perfect tender rule in that despite 2–601, the intent of the Code is to apply the doctrine of substantial performance to sales contracts.").

performance is not applicable under 2–601); *Ramirez*, 440 A.2d at 1349 (before acceptance, the buyer may reject goods for any nonconformity); *Sudol v. Rudy Papa Motors*, 175 N.J.Super. 238, 240–241, 417 A.2d 1133, 1134 (1980) (section 2–601 contains perfect tender rule); *see also Bowen v. Young*, 507 S.W.2d 600, 602 (Tex.Civ.App. 1974) (where goods fail in any respect to conform to the contract the buyer may, under 2–601, reject the entire unit); *Maas v. Scoboda*, 188 Neb. 189, 193, 195 N.W.2d 491, 494 (1972) (under the UCC a buyer is given the right to reject the whole if the goods fail in any respect to conform to the contract); *Ingle v. Marked Tree Equip. Co.*, 244 Ark. 1166, 1173, 428 S.W.2d 286, 289 (1968) (a buyer may accept or reject goods which fail to conform to the contract in any respect). Similarly, courts interpreting 2–601 have strictly interpreted it to mean any nonconformity, thus excluding the doctrine of substantial performance.[6] *Printing Center of Texas, Inc. v. Supermind Pub. Co. Inc.*, 669 S.W.2d 779, 783 (Tex.App.1984) (the term conform within 2–601 authorizing the buyer to reject the whole if the goods or tender of delivery fail in any respect to conform to the contract does not mean substantial performance but complete performance); *Astor v. Boulos, Inc.*, 451 A.2d 903, 906 (Me.1982) (the generally disfavored "perfect tender rule" survives enactment of the UCC as respects a contract for sale of goods but does not control in the area of service contracts which are governed by the standard of substantial performance); *Moulton Cavity & Mold, Inc. v. Lyn–Flex Indus., Inc.*, 396 A.2d 1024, 1027–28 (1979) (holding that the doctrine of substantial performance "has no application to a contract for the sale of goods"); *Jakowski v. Carole Chevrolet, Inc.*, 180 N.J.Super. 122, 125, 433 A.2d 841, 843 (1981) (degree of nonconformity of

goods is irrelevant in assessing buyer's concomitant right to reject them). These courts have thus found that the tender must be perfect in the context of the perfect tender rule in the sense that the proffered goods must conform to the contract in every respect. Connecticut, however, appears in this regard to be the exception. Indeed, in the one Connecticut case interpreting 2–601, *Franklin Quilting Co., Inc. v. Orfaly*, 1 Conn.App. 249, 251, 470 A.2d 1228, 1229 (1984), in a footnote, the Appellate Court stated that "the 'perfect tender rule' requires a *substantial nonconformity* to the contract before a buyer may rightfully reject the goods." *Id.* at 1229 n. 3, citing White & Summers, *Uniform Commercial Code* (2d Ed.), section 8–3 (emphasis supplied). Thus, the Connecticut Appellate Court has adopted "the White and Summers construction of 2–601 as in substance a rule that does not allow rejection for insubstantial breach such as a short delay causing no damage." *Id.* (3rd Ed.) section 8–3. *See also National Fleet Supply, Inc. v. Fairchild*, 450 N.E.2d 1015, 1019 n. 4 (Ind.App.1983) (despite UCC's apparent insistence on perfect tender, it is generally understood that rejection is not available in circumstances where the goods or delivery fail in some small respect to conform to the terms of the sales contract (citing White and Summers)); *McKenzie v. Alla–Ohio Coals, Inc.*, 29 U.C.C.Rep.Serv. (Callaghan) 852, 856–57 (D.D.C.1979) (there is substantial authority that where a buyer has suffered no damage, he should not be allowed to reject goods because of an insubstantial nonconformity).

■ As noted above, a federal court sitting in diversity must apply the law of the highest court of the state whose law applies. Since this court has determined that Connecticut law governs,[7] the next task is

---

**6.** This interpretation allowing a buyer to cancel a contract for any nonconformity dates back to the common law interpretation of the perfect tender rule in the law of sales which differed from the law of contracts, which allows rescission only for material breaches. *Ramirez v. Autosport*, 88 N.J. 277, 284, 440 A.2d 1345, 1349 (1982). Thus, Judge Learned Hand stated in *Mitsubishi Goshi Kaisha v. J. Aron & Co., Inc.*,

16 F.2d 185, 186 (2d Cir.1926), that "[t]here is no room in commercial contracts for the doctrine of substantial performance." While Judge Hand wrote in a pre-UCC context, modern courts have reiterated the view that perfect tender does not require substantial performance but complete performance.

**7.** When, however, each state has adopted the UCC provisions, a federal court sitting in diver-

to estimate whether the Connecticut Supreme Court would affirm the doctrine of substantial nonconformity, as stated in *Orfaly*, an opinion of the Connecticut Appellate Court. When the highest state court has not spoken on an issue, the federal court must look to the inferior courts of the state and to decisions of sister courts as well as federal courts. As noted, the weight of authority is that the doctrine of substantial performance does not apply to the sale of goods. However, as noted by White and Summers, in none of the cases approving of perfect rather than substantial tender was the nonconformity insubstantial, such as a short delay of time where no damage is caused to the buyer. White and Summers, *Uniform Commercial Code* (3rd Ed.), section 8–3 n. 8. In the instant case, there is no claim that the goods failed to conform to the contract. Nor is there a claim that the buyer was injured by the 16–day delay. There is, however, a claim that the goods were specially made, which might affect the buyer's ability to resell. Thus Connecticut's interpretation of 2–601 so as to mitigate the harshness of the perfect tender rule reflects the consensus of scholars that the rule is harsh and needs to be mitigated.[8] Indeed, Summers and White state that the rule has been so "eroded" by the exceptions in the Code that "relatively little is left of it; the law would be little changed if 2–601 gave the right to reject only upon 'substantial' non-conformity," especially since the Code requires a buyer or seller to act in good faith. R. Summers and J. White, *Uniform Commercial Code* (3rd Ed. 1988), 8–3, at 357. *See also Alden Press Inc. v. Block & Co., Inc.*, 123 Ill.Dec. 26, 30, 173 Ill.App.3d 251, 527 N.E.2d 489, 493 (1988) (notwithstanding the perfect

tender rule, the reasonableness of buyer's rejection of goods and whether such rejection of goods is in good faith are ultimately matters for the trier of fact); *Printing Center of Texas v. Supermind Pub. Co., Inc.*, 669 S.W.2d 779, 784 (Tex.App.1984) (if the evidence establishes any nonconformity, the buyer is entitled to reject the goods as long as it is in good faith); *Neumiller Farms, Inc. v. Cornett*, 368 So.2d 272, 275 (Ala.1979) (claim of dissatisfaction with delivery of goods so as to warrant their rejection must be made in good faith, rather than in an effort to escape a bad bargain). A rejection of goods that have been specially manufactured for an insubstantial delay where no damage is caused is arguably not in good faith.

Although the Connecticut Supreme Court has not yet addressed the issue of substantial nonconformity, it has stated, in a pre-code case, *Bradford Novelty Co. v. Technomatic*, 142 Conn. 166, 170, 112 A.2d 214, 216 (1955), that although "[t]he time fixed by the parties for performance is, at law, deemed of the essence of the contract," where, as here, goods have been specially manufactured, "the time specified for delivery is less likely to be considered of the essence ... [since] in such a situation there is a probability of delay, and the loss to the manufacturer is likely to be great if the buyer refuses to accept and pay because of noncompliance with strict performance." *Id.* But see *Marlowe v. Argentine Naval Com'n*, 808 F.2d 120, 124 (D.C.Cir.1986) (buyer within its rights to cancel a contract for 6–day delay in delivery since "time is of the essence in contracts for the sale of goods") (citing *Norrington v. Wright*, 115 U.S. 188, 203, 6 S.Ct. 12, 14, 29 L.Ed. 366

---

sity need not choose which state's law applies but may look to the prevailing authority, as long as there are no apparent disagreements in their interpretation of relevant portions of the UCC. *Quaker Alloy Coating Co. v. Gulfco, Ind., Inc.*, 686 F.Supp. 1319, 1326 (N.D.Ill.1986).

**8.** This was the concern of Karl Llewellyn, which led the Code's drafters to carve out exceptions to the perfect tender rule. *See, e.g., Leitchfield Dev't Corp. v. Clark*, 757 S.W.2d 207 (Ky.App. 1988) (perfect tender rule of UCC is modified

and limited by Code language that seller has reasonable opportunity to cure improper tender); *T.W. Oil, Inc. v. Consolidated Edison Co. of New York, Inc.*, 457 N.Y.S.2d 458, 463, 57 N.Y.2d 574, 443 N.E.2d 932, 937 (1982) (seller's right to cure defective tender, Section 2–508, was intended to act as a meaningful limitation on the absolutism of the perfect tender rule under which no leeway was allowed for any imperfections.)

**1044**

(1885) ("In the contracts of merchants, time is of the essence.")

After reviewing the case law in Connecticut, this court finds that in cases where the nonconformity involves a delay in the delivery of specially manufactured goods, the law in Connecticut requires substantial nonconformity for a buyer's rejection under 2–601, and precludes a dismissal for failure to state a claim on the grounds that the perfect tender rule, codified at 2–601, demands complete performance. Rather, Connecticut law requires a determination at trial as to whether a 16–day delay under these facts constituted a substantial nonconformity.

*Conclusion*

For the foregoing reasons, the defendant's rule 12(b)(6) motion to dismiss this one count complaint is denied.

SO ORDERED.