United States Court of Appeals,

Eleventh Circuit.

No. 94-6700

Non-Argument Calendar.

HUNTSVILLE HOSPITAL, a public health care authority, Plaintiff-Appellee,

v.

MORTARA INSTRUMENT, Defendant-Third-Party Plaintiff-Appellant,

v.

Rusty DICKERSON, individually d/b/a Quality Rep Services, Third-Party Defendant.

July 12, 1995.

Appeal from the United States District Court for the Northern District of Alabama. (No. 93-L-2310-NE), Seybourn H. Lynne, Judge.

Before DUBINA and BARKETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

The plaintiff-appellee, Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital (the hospital), filed this action in the Circuit Court of Madison County, Alabama. Subsequently, the defendant-appellant, Mortara Instrument (Mortara), filed a notice of removal to the United States District Court for the Northern District of Alabama, Northeastern Division, on diversity grounds. The district court, after hearing *ore tenus* evidence, entered a Judgment and Memorandum Opinion in favor of the hospital. We affirm.

I. FACTUAL BACKGROUND

In late 1991, the hospital began negotiating with Quality Rep Services, a recognized agent and distributor for Mortara, for the

purchase of an electrocardiogram management system manufactured by Mortara. Michael Carter, the Director of Cardiology Services, represented the hospital. Rusty Dickerson, Quality Rep Services' president, represented Mortara.

The terms of the sale of the system were stated by two documents: Mortara Quotation MI-2027-1 and a June 1, 1992 letter from Dickerson to Carter. In the letter, Dickerson offered the hospital a six-month "right of return" on the system. He stated:

> this means that during the first six months after installation, should the hospital be dissatisfied with the system, you may return it, and all monies paid to Mortara Instruments will be returned to you.

The hospital agreed to purchase the system for $155,380.[1] Mortara completed the installation of the system at the hospital on August 14, 1992.

After installation, the hospital experienced continuous problems with the system. Carter testified that in late 1992 he asked a Quality Rep Services salesperson how the hospital should exercise its right of return if it chose to do so. According to Carter, the salesperson replied that if necessary he would "back a truck up" and take the system away himself.

On February 10, 1993, within the six-month return period, Carter notified Dickerson that the hospital was electing to "exercise [its] option to return all equipment and software for the complete refund." Carter added that the hospital would need 30 days to purchase a replacement system. Five days later, Carl Jeffries, the hospital's Director of Material Management, sent

---

[1]The hospital received a $24,000 credit for trading in used hardware and paid an additional $130,901.20 by check.

Mortara a fax asking that it "fully coordinate the return of the check" in advance of picking up the system. On the same day, Jeffries sent Mortara a letter requesting a refund check "on the day that you pick up the equipment."

On March 29, 1993, Mortara's president sent Jeffries a letter listing several considerations for the return of the system, including a restocking fee and effective April 1, 1993, a $100-per-day charge for the hospital's use of the system. On May 10, 1993, the hospital installed a replacement system. On May 27, 1993 the hospital's counsel informed Mortara that its system was available for retrieval. However, Mortara did not retrieve the system or refund any portion of the purchase price.

The district court concluded that under *Ala.Code* §§ 7-2-602 and 7-2-604 (1975), which are provisions governing sales, the hospital was entitled to a refund of the system's purchase price. The court did allow Mortara a $5900 setoff, representing $100 per day for the hospital's use of the system from March 29 to May 27, 1993.

II. DISCUSSION

Mortara, appealing the district court's decision, first contends that its agreement with the hospital required the hospital to physically return the system from Huntsville, Alabama to Mortara's office in Milwaukee, Wisconsin by February 14, 1993 in order for the hospital to be entitled to a refund. As authority for this contention, Mortara relies on a seventy-year-old Oklahoma case regarding "sale or return" contracts under the common law of sales. However, the instant case is clearly governed by the

Uniform Commercial Code as adopted in Alabama. *See Intercorp, Inc. v. Pennzoil Co.,* 877 F.2d 1524, 1527 (11th Cir.1989).

According to *Ala.Code* § 7-2-601(a), if goods do not conform to a contract, the buyer may reject them. In the instant case, there is no question that the system did not conform to the contract. Indeed, the parties have stipulated that the hospital was sufficiently dissatisfied to allow it to exercise its "right of return." Under *Ala.Code* § 7-2-602(1), rejection is ineffective unless the buyer seasonably notifies the seller. An action is taken "seasonably" when it is taken within the time agreed. *Ala.Code* § 7-1-204(3). Here, the parties set the time for rejection at six months. Clearly, Carter notified Dickerson the hospital was electing to exercise its option to return within six months of the system's installation.[2]

Mortara maintains that the contract required the hospital to not just notify Mortara, but physically return the system within six months. This analysis is inconsistent with the Law of Sales in Alabama. *Ala.Code* § 7-2-602(2) states that when a buyer is in possession of goods after rejection, he is under a duty to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them, but *the buyer has no further obligations with regard to goods rightfully rejected.* (emphasis added) *Ala.Code* § 7-2-604 adds that if the seller gives no instructions within a reasonable time after notification of

---

[2]The district court apparently found that the parties agreed to extend the six-month return period by ninety days. Because Carter's notification was within the original six-month return period, we need not review that finding.

rejection,[3] the buyer may store, reship, or resell the rejected goods. According to the official comment these actions are at the buyer's option.

Therefore, we find that the hospital properly rejected the electrocardiogram management system. After Carter notified Dickerson on February 10 that the hospital was electing to exercise its option to return, the hospital was under no further obligations. The U.C.C. as adopted in Alabama in no way requires the hospital to physically return the system in order to be entitled to a refund.[4]

Moreover, the resolution of this case under the terms of the U.C.C. is consistent with Carter's uncontroverted testimony that the Quality Rep Services salesperson responded to Carter's request regarding how to effectuate a return by promising that if necessary he would "back a truck up" and take the system away himself. Mortara challenges the district court's consideration of this testimony as use of parol evidence to impeach or vary the terms of a written agreement. However, *Ala.Code* § 7-2-202(b) specifically allows the terms of a written agreement to be explained "by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." Here, there is

---

[3]Mortara never instructed the hospital as to what carrier to use or how to pack the system for return.

[4]As the Supreme Court of Nebraska stated in *Maas v. Scoboda,* 188 Neb. 189, 195 N.W.2d 491 (1972), "the law regards parties as being competent to contract as they see fit with respect to the satisfactory character of equipment sold and the seller assumes the hazard of rendering performance according to the terms of the contract."

absolutely no indication that the district court found the parties' written agreement to be a complete and exclusive statement of the terms of their agreement. Therefore, it was not error for the court to consider Carter's testimony.

Lastly, Mortara asserts that the district court erred in calculating the $5900 setoff. The concept of setoff in sales cases is based on *Ala.Code* § 7-2-602(2)(a), which provides that "after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller." *See Ex parte Stem,* 571 So.2d 1112, 1115 (Ala.1990). In calculating the setoff, the district court found that after rejection, the hospital used the electrocardiogram management system until May 27, 1993, the day the hospital's counsel informed Mortara that its system was available for retrieval. The court derived the $100-per-day charge from the March 29, 1993 letter Mortara itself sent the hospital.

We review the district court's determination of damages for clear error. *Taylor Rental Corp. v. J.I. Case Co.,* 749 F.2d 1526, 1530 (11th Cir.1985). Mortara has presented no evidence to counter testimony by Carter that after the hospital installed a replacement system on May 10, 1993, the Mortara system was never used for any purpose other than retrieving or editing tests that had already been performed. Regarding the $100 fee, that amount was voluntarily set by Mortara. At trial, the court noted that the fee was described in document exhibits as a usage fee. Mortara offered no evidence of rental fees charged by lessors of similar equipment. Therefore, we cannot find the district court's setoff calculation clearly erroneous.

III. CONCLUSION

For the reasons stated herein we hold that the district court properly decided the merits of this case in favor of the hospital and, accordingly, AFFIRM the court's judgment.