[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT
This is a collection action against the defendants Post Liquors, Inc., Nick Jadeja and Ramesh Patel. Before the court is the defendant Patel's Motion for Summary Judgment in which he asks the court to rule that he has no liability as the guarantor of the Post Liquor debt because the debt is not enforceable against the principal and, even if it were, the guaranty is not enforceable against him. The first count alleges that the plaintiff, Star Distributors, sold beer to Post Liquors on an open account and that Post Liquors has failed to pay the balance owed to the plaintiff in the amount of $14,024.70. The second and third counts allege respectively that the defendants, Jadeja and Patel, executed a written personal guaranty of the obligations of Post Liquors to the plaintiff and has failed to pay such obligations. The defendant Patel filed an answer to the complaint asserting special defenses based on the Uniform Commercial Code ("UCC") statute of frauds governing contracts for the sale of goods, on General Statutes §30-112, which bars civil action on certain debts and on 15 U.S.C. § 1629, the Fair Debt Collection Practices Act.
The defendant asserts that he is entitled to summary judgment because the plaintiff's action is barred by General Statutes CT Page 2232 § 30-112 or because the alleged agreement between the plaintiff and the defendant did not comply with the statute of frauds, General Statutes § 42a-2-201. The plaintiff filed an objection to the defendant's motion for summary judgment, and filed its own motion for summary judgment as to the defendant's third special defense on the basis that the Fair Debt Collection Practices Act does not apply to the present action.
The court will first address the plaintiff's Motion for Summary Judgment on the defendant's Third Special Defense. Judgments of this kind can only be obtained on complaints or counterclaims.
"The Superior Courts are almost in unanimous agreement that a motion for summary judgment as to a special defense is improper since Practice Book Section 379 makes no provision for it." (Internal quotation marks omitted.) Town of Seymour v. Buckley, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 049330 (January 23, 1997, Curran, J.T.R.) (18 Conn. L. Rptr. 583); see also West v. Norwalk Hospital, Superior Court, judicial district of Stamford, Docket No. 148195 (March 12, 1997, D'Andrea, J.) (19 Conn. L. Rptr. 67); Village Savings Bank v.Albrecht, Superior Court, judicial district of Waterbury, Docket No. 116572 (November 1, 1994, Flynn, J.) (12 Conn. L. Rptr. 589);Conlam v. Heritage Kitchens, Ltd., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 036443 (May 13, 1992, Flynn, J.) The plaintiff's Motion for Summary Judgment is denied.
The court will now turn to the defendant's Motion for Summary Judgment.
The defendant moves for summary judgment on the ground that the plaintiff is prohibited by General Statutes § 30-112 from maintaining a civil action against him for the alleged liquor sales debt. General Statutes § 30-112 provides: "No civil action shall be maintained upon any debt incurred for the sale of alcoholic liquor, except upon any debt incurred in the purchase of alcoholic liquor for off-premise consumption or for on-premise consumption together with an order of food, or unless the purchaser at the time of purchase was a permittee purchasing for resale." The defendant argues that because he did not purchase the liquor for his own consumption, either on- or off-premise, and because he was not a permittee purchasing for resale, none of the exceptions to the statute apply and the plaintiff may not maintain the action. CT Page 2233
In opposition the plaintiff argues that since the liquor at issue was purchased for off-premise consumption — i.e., by a retail liquor store for sale to others for off-premise consumption — the debt falls within the first exception under the statute. In the alternative, the plaintiff argues that the debt falls within the third exception because the liquor was originally purchased by a permittee, Nick Jadeja, for resale. According to the plaintiff, because the statute does not say that the only person responsible for payment must be the permittee to whom liquor was sold in order to maintain suit under the exception, the plaintiff's action is not barred by § 30-112. That is, as long as the original purchase was made by a permittee for the purpose of resale, the fact that others may become involved in the obligations owed on the debt incurred is of no moment.
The Connecticut courts have not interpreted § 30-112. An examination of the history of the statute and its amendments, however, reveals that the defendant is correct that the plaintiff's suit on the alleged debt cannot be sought under the off-premise consumption exception. The exception was intended to provide a remedy for retail liquor stores against individuals buying liquor on credit where previously the liquor store had no remedy for nonpayment. The exception applies only to those situations where liquor is purchased from a retail liquor store by someone for consumption off the premises of the liquor store. Under the present circumstances, the debt was not incurred in the purchase of liquor for off-premise consumption but for resale, and therefore the exception does not apply.
The court holds that the plaintiff may seek civil damages on the debt under the third exception. The purpose of the enactment of the statute was to "protect the public [from] liquor dealers who otherwise take advantage of people because of their weaknesses cannot protect themselves." H.R. Proc., 1961 Sess., p. 2543, remarks of Representative Scoville. The exception, if extended to the circumstances of the present action, would not run afoul of this purpose. In fact, the existence of the exception would seem to support a civil action under the present circumstances; the exception was apparently included to protect liquor manufacturers or wholesalers from liquor retailers seeking to take advantage of the statute to avoid paying debts while running up bills on the purchase of liquor to stock their shelves. Here, there is no sound reason not to interpret the exception to include the guarantor of a credit arrangement between a permittee and a liquor distributor. CT Page 2234 The defendant's motion for summary judgment on this ground is denied.
The defendant next argues that he is entitled to summary judgment on the basis that the debt falls within the statute of frauds governing contracts for the sale of goods under Connecticut's version of the UCC, General Statutes § 42a-2-201. The defendant asserts that since the alleged guaranty agreement is in an amount in excess of $500, and does not fall within an exception to the statute of frauds, it is unenforceable because there is no writing evidencing the debt. The plaintiff argues that there is a genuine issue of material fact with regard to (1) whether there was a writing sufficient to meet the statute of frauds, and (2) whether there was a contract for the sale of goods for the price of $500 or more, and therefore summary judgment is inappropriate.
General Statutes § 42a-2-201 (1) provides: "Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." In order for an alleged contract to be governed by article 2 of the UCC, the contract must be one for the sale of goods. See Beckenstein v. Potter Carrier,Inc., 191 Conn. 150, 164, 464 A.2d 18 (1983); Bead ChainManufacturing v. Saxton Products, Inc., 183 Conn. 266, 270,439 A.2d 314 (1981); Franklin Quilting Co. v. Orfaly, 1 Conn. App. 249,251, 470 A.2d 1228 (1984); General Statutes § 42a-2-102 ("this article applies to transactions in goods"). Thus, the threshold question in the present case is whether the alleged agreement between the plaintiff and the defendant sued upon would constitute a contract for the sale of goods. If the question is answered in the affirmative, the alleged contract would be governed by article 2 and subject to § 42a-2-201; if answered in the negative, article 2 would not apply.[1]
Clearly the guaranty agreement itself is not a contract for the sale of goods; rather, it is an agreement whereby the defendant has allegedly promised payment in the event the original buyer failed to pay. There has been no transfer of "goods"[2] between a CT Page 2235 buyer and plaintiff as a seller pursuant to the guaranty agreement. There has been no sale.[3]
In addition, in the context of § 42a-2-201 and its subprovisions, the contract or agreement addressed by the section apparently is intended to be the contract for the sale of the goods itself, not necessarily an agreement guarantying payment on that contract. For example, § 42a-2-201 (1) provides that "[a] writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." An agreement for the guaranty of payment would not likely contain terms agreed upon by the buyer and seller, nor would it need to. The quoted language seems to be directed to the agreement for the sale of goods itself. Similarly, subsection (2) addresses confirmatory memoranda between merchants to solidify an oral agreement for the sale of goods. See General Statutes §42a-2-201 (2). Nevertheless, the question remains whether the alleged agreement to guaranty payment, based on the underlying contract for the sale of goods, falls within the purview of article 2 of the ucc.
No Connecticut case has specifically addressed whether an alleged oral agreement for the guaranty of payment constitutes a contract for the sale of goods. In Associated CatalogMerchandisers, Inc. v. Chagnon, 210 Conn. 734, 557 A.2d 525 (1989), however, the court examined the applicable statute of limitations in an action on an "installment note" executed by the defendants to provide a continuing personal guaranty on the debt arising from an open account with the plaintiff to provide merchandise to the defendants' business. The court rejected the plaintiff's argument that the applicable statute of limitations was found in article 2 of the UCC, General Statutes § 42a-2-725, because "[t]he contract at issue . . . [was] the continuing guaranty between the parties, and not the underlying open credit account by which the plaintiff sold goods to the defendants' business." Associated CatalogMerchandisers, Inc. v. Chagnon, supra, 210 Conn. 746 n. 6. Thus, the court applied General Statutes § 52-576, the general statute of limitations for simple contracts, rather than the shorter UCC statute of limitations.
Similarly, the New York Court of Appeals has addressed the applicability of the statute of limitations found in article 2 of the UCC to an action by a seller of goods against a guarantor of payment. See American Trading Co. v. Fish, 42 N.Y.2d 23, CT Page 2236364 N.E.2d 1309, 396 N.Y.S.2d 617 (1977). In American Trading, the court determined that "the appropriate Statute of Limitations with respect to the defendant's guarantee should be the six-year period applicable to contracts generally under CPLR 213 (subd. 2). This determination is not based on any conclusion that the agreement here did not involve a sale of goods. . . . Rather, it is based on the recognition that defendant's guarantee was an undertaking separate from the sales arrangement itself. In so holding, we reject the notion that a guarantee of a contract of sale must in all instances be subjected to the same Statute of Limitations as the underlying obligation. Of course, the Uniform Commercial Code rather than the CPLR controls with regard to contracts for the sale of goods. . . . However, article 2 of the Uniform Commercial Code does not expressly or by implication provide that it is applicable to guarantees of such contracts, and there is no statutory direction requiring that its provisions supersede the CPLR simply because the undertaking in question is a guarantee of a contract for the sale of goods rather than some other type of contract. . . . In light of this, it is appropriate to treat the guarantee as an obligation separate and distinct from, rather than subsumed by, the underlying contract of sale." AmericanTrading Co. v. Fish, supra, 396 N.Y.S.2d 620.
Closer to the facts of the present case, Jim Slim's ToolSupply, Inc. v. Metro Communities Corp. , 328 So.2d 213 (Fla.App. 1976), addressed whether an oral "guarantee" of payment by the defendant for $800 worth of past building materials supplied to a subcontractor, in consideration for which the plaintiff agreed to continue furnishing materials to complete the job, fell within either the general statute of frauds in Florida or the UCC statute of frauds. The court held that the promise fell within neither the general statute of frauds nor the UCC statute.
Pursuant to analysis under the UCC statute of frauds, the court held that with regard to material received after the oral promise, and "[a]ssuming without deciding that [the plaintiff's] contracts in the building trade are within the purview of the statute," the materials were delivered pursuant to the agreement and were received and accepted. Therefore, the agreement fell within an exception to the statute of frauds, UCC § 2-201 (3)(c).Jim Slim's Tool Supply, Inc. v. Metro Communities Corp. , supra, 328 So.2d 215. With regard to material received before the oral promise, the court determined that the materials "were not delivered pursuant to a contract for sale'" under the definition in § 2-106 of the UCC and therefore the statute was inapplicable. CT Page 2237Jim Slim's Tool Supply, Inc. v. Metro Communities Corp. , supra, 328 So.2d 215.
An alleged agreement for the guaranty of payment on an underlying debt is not itself a contract for the sale of goods, and is thus not governed by article 2 of the UCC. Consistent with this conclusion, the statute of frauds of article 2 is inapplicable. The defendant's motion for summary judgment on the basis of insufficient writing to satisfy General Statutes § 42a-2-201 is denied.
Even if one were to conclude that the alleged agreement between the plaintiff and the defendant is a contract for the sale of goods governed by article 2 of the UCC, there exist genuine issues of material fact with respect to the terms of the agreement that preclude resolution on summary judgment. For example, it is unclear whether the defendant agreed to guaranty payment for past, future, or both past and future debts of Post Liquors. The court cannot decide in this motion whether the guaranty induced the plaintiff to make additional deliveries to Post Liquors, and thus the deliveries were made pursuant to the agreement between the plaintiff and the defendant. See Jim Slim's Tool Supply, Inc., supra. If so, even if the code were applicable, this kind of evidence would involve an exception to the statute of frauds under subsection (3)(c) for receipt and acceptance of the goods. See General Statutes § 42a-2-201 (3)(c); General Statutes § 42a-2-606
(addressing "[w]hat constitutes acceptance of goods"). There is, then, a genuine issue of material fact as to whether the guaranty induced further deliveries and whether such deliveries were received and accepted.
There is also a genuine issue of material fact as to the amount of the guaranty. Under § 42a-2-201, the statute of frauds precludes enforcement of an oral agreement only if the agreement was a contract for the sale of goods for a price of $500 or more. Construing the facts in a light most favorable to the plaintiff, it appears that some of the underlying contracts for the sale of beer were in amounts of less than $500. It is not clear whether the defendant intended to guaranty each contract as it arose, the aggregate of the contracts as measured at any point in time, or the aggregate of the contracts plus any future purchases made on the open account between Post Liquors and the plaintiff. Summary judgment cannot resolve the current dispute over an alleged oral guaranty of payment by the defendant on a motion for summary judgment, as the facts viewed in a light most favorable to CT Page 2238 the plaintiff reveal genuine issues more appropriately resolved at trial. "A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . . `Issue of fact' encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 379, 260 A.2d 596 (1969). The defendant's motion for summary judgment is denied.
FLYNN, J.