Cooke, J.
This case presents the question of whether the four-year Statute of Limitations under subdivision 1 of section 2-725 of the Uniform Commercial Code bars this action by a seller of goods against a guarantor to recover amounts due on dishonored trade acceptances and bills of exchange issued pursuant to a contract for the purchase of such goods by a corporation no longer in business.
In June, 1967, plaintiff American Trading Company, Inc., entered into a written agreement with Kinematix, Inc., and its sole shareholder, defendant Leonard Fish. The tripartite agreement provided for the establishment of a branch office of plaintiff at the offices of Kinematix. Defendant Fish was to act as branch manager of that office without compensation because the parties "recognized that the consideration for his acceptance of such employment are the benefits flowing to Kinematix from this agreement.” The understanding between the corporations was that Kinematix would purchase basically all of the materials used in its business from American, and American in turn agreed to sell to Kinematix all such materials at a price based on direct cost plus 5%. The pivot of this action is a clause stating: "Fish hereby guarantees full performance by Kinematix of all of the terms and conditions of this agreement on the part of Kinematix to be performed.”
Trade acceptances and bills of exchange were executed and delivered by Kinematix to American pursuant to the agreement, but all of these instruments were dishonored. Judgments obtained against Kinematix within four years from the date of the last such instrument remain uncollectible. American then sought to recover against defendant on the guarantee. This action, however, was not commenced until four and one-half years from the date of the last trade acceptance, allegedly because of difficulty encountered in serving defendant Fish.
Special Term granted defendant Fish’s motion to dismiss on the ground that the action was barred by the four-year Statute of Limitations under subdivision 1 of section 2-725 of the Uniform Commercial Code. It was reasoned that defendant’s *24 liability could not exceed that assumed by his principal (Kinematix), that the essence of the transaction was a sale of goods, and that therefore defendant’s guarantee was subject to the four-year Statute of Limitations under the Uniform Commercial Code rather than the six-year limitation under CPLR 213 (subd 2). In this regard, the court construed the agreement as requiring the defendant to guarantee payment for the sales and not payment of the trade acceptances as such, thus dismissing the contention that defendant was liable on the trade acceptances. Finally, it rejected plaintiff’s argument that, because it allegedly took six months to ascertain defendant’s residence address in Illinois, the Statute of Limitations tolled pursuant to CPLR 207, and the contention that certain letters from defendant constituted an acknowledgment and promise to pay sufficient to start the statute running anew (see General Obligations Law, § 17-101). The Appellate Division affirmed for the reasons advanced by Special Term.
There should be a reversal. Although a narrow reading of the agreement executed by American, Kinematix and defendant may lead one to the conclusion that the "essence” of the transaction is the sale of goods, the writing actually embodies separate undertakings—a contract for the sale of goods between American and Kinematix, an obligation to manage the branch office undertaken by defendant, and a guarantee by defendant to American that Kinematix will perform. It is taking far too formalistic an approach to say that all this was merely a sales agreement and that, solely for this reason, defendant’s guarantee is subject to the Statute of Limitations applicable to contracts for the sale of goods under subdivision 1 of section 2-725 of the Uniform Commercial Code.
In resolving the question of which Statute of Limitations is applicable and in examining certain contentions of defendant, we must proceed from a point recognizing the instrument under survey as more than a mere contract for the sale of goods. Initially, we reject the argument that defendant was not a guarantor but a co-obligor of the contract of sale, and hence a beneficiary of the Statute of Limitations applicable to such contracts. Defendant’s obligations, both as a guarantor and as a branch manager, were of a different nature from those of Kinematix. Despite assertions to the contrary, in our view the agreement did not grant defendant the right to enforce the sales aspect of the agreement against American. Therefore, we conclude that defendant’s undertaking in this *25 respect was not that of co-obligor, but rather that of guarantor of the obligation of Kinematix.
It is urged that since an action based on the contract of sale would be barred by the Statute of Limitations, this action on defendant’s undertaking is likewise barred. In support of this position, defendant quotes the following from Matter of Cheesman v Cheesman (236 NY 47, 51): "It is the general rule that a surety is not liable if the original debt is barred by the Statute of Limitations. In such a case no recovery may be had even where the principal has allowed judgment to be taken against him. The surety may avail itself of the statute in an action brought against it * * * McMullen v. Rafferty, 89 N. Y. 456”.
In Cheesman, an employee had failed to file a claim within the one-year period required under the then existing provisions of the Workmen’s Compensation Law. At a hearing on the claim, the carrier objected to the delay but the employer, who was the claimant’s father, did not join in this objection. As to the employee, the court characterized the carrier as a surety which could raise the objection independently of the employer. The court then made the quoted statement regarding a surety’s liability.
Despite the language used in Cheesman, it is noteworthy that the case contains no discussion of the Statute of Limitations applicable to the carrier. By comparison, in McMullen v Rafferty (89 NY 456 [1882]), cited in Cheesman for the quoted proposition, the court determined that the cause of action against a guarantor of nonnegotiable notes accrued at the same time as it accrued against the maker, and thus the period for bringing the action had expired at the same time with respect to both the maker and the guarantor. Hence, neither Cheesman nor McMullen involve a situation where for some reason the period of time for bringing the action against the guarantor had not yet expired but the period had run as to the principal. In other words, under the facts of those cases, the court was not confronted with the question of whether in an action not otherwise barred a guarantor is relieved of liability solely because the action against the principal is time-barred (see Surety—Limitation of Actions, Ann., 122 ALR 204, 208-209).
It has been said that "the weight of authority is against the surety pleading the running of the Statute of Limitations against his principal” (10 Williston, Contracts, [3d ed, 1967], *26 § 1214, p 715; see, e.g., Weems v Carter, 30 F2d 202; see, also, 38 Am Jur 2d, Guaranty, § 53). To the extent that any formal distinction is still made between a surety and a guarantor (see 57 NY Jur, Suretyship and Guaranty, § 15), as to the latter the authority is weighted in the same direction (see Guarantor —Release or Discharge, Ann., 58 ALR2d 1272; compare Bomud Co. v Yockey Oil Co., 180 Kan 109). This is illustrated in Manufacturers Trust Co. v McConnell (72 NYS2d 876 [Hecht, J.]), where as an affirmative defense a guarantor claimed to be discharged because the creditor failed to proceed against the principal on certain notes until after any action thereon was barred by the Statute of Limitations. Rejecting this contention the court commented that "[i]t was no condition of the guaranty that a valid cause of action should exist against the [principal] at the time when recovery was sought on the guaranty” (p 878).
There is a very basic reason why the guarantor should not be discharged merely because the Statute of Limitations could have been raised in an action against the principal. While ordinarily the liability of a guarantor will not exceed in scope that of his principal, the guarantee is a separate undertaking and may impose lesser or even greater collateral responsibility on the guarantor (see Standard Brands v Straile, 23 AD2d 363; 10 Williston, Contracts, [3d ed, 1967], § 1211, p 686; see, generally, 57 NY Jur, Suretyship and Guaranty, § 108; cf. Pink v Investors Syndicate Tit. & Guar. Co., 246 App Div 172, 174, affd 273 NY 483; Richardson Press v Albright, 224 NY 497). Although the language employed in Cheesman may imply a contrary approach, it should not be read as creating an immutable rule that if the action against the principal is time-barred the guarantor is automatically discharged. Cheesman has not generally been so read (see, e.g., People v Standard Acc. Ins. Co., 17 AD2d 1, 3, see, also, p 4 [dissent], mod on other grounds 13 NY2d 751; see, generally, 57 NY Jur, Suretyship and Guaranty, § 236; but see, e.g., Matter of Donahue, 78 Misc 2d 923), and to the extent that its language may be in opposition to the foregoing analysis, it is now expressly disapproved. This issue thus resolved, we come to the question of whether this action against defendant is time-barred.
In our view, the appropriate Statute of Limitations with respect to defendant’s guarantee should be the six-year period applicable to contracts generally under CPLR 213 (subd 2). *27 This determination is not based on any conclusion that the agreement here did not involve a contract for the sale of goods (compare Owens v Patent Scaffolding Co., Div. of Harsco Corp., 50 AD2d 866; Schenectady Steel Co. v Trimpoli Gen. Constr, Co., 43 AD2d 234, affd on other grounds 34 NY2d 939). Rather, it is based on the recognition that defendant’s guarantee was an undertaking separate from the sales arrangement itself. In so holding, we reject the notion that a guarantee of a contract of sale must in all instances be subject to the same Statute of Limitations as the underlying obligation. Of course, the Uniform Commercial Code rather than the CPLR controls with regard to contracts for the sale of goods (CPLR 213, subd 2). However, article 2 of the Uniform Commercial Code does not expressly or by implication provide that it is applicable to guarantees of such contracts, and there is no statutory direction requiring that its provisions supersede the CPLR simply because the undertaking in question is a guarantee of a contract for the sale of goods rather than some other type of contract (see CPLR 201). In light of this, it is appropriate to treat the guarantee as an obligation separate and distinct from, rather than subsumed by, the underlying contract of sale. So viewed, the guarantee is subject to the six-year period of limitations applicable to contracts generally, and therefore it was error for the courts below to dismiss as time-barred this action against defendant.
An alternative ground for our holding is simply that defendant’s guarantee, apart from the underlying sales contract, covered the trade acceptances furnished to plaintiff by Kinematix, and therefore this action was timely since it was commenced within the six-year period for bringing an action on such trade acceptances. This is not to consider whether defendant guaranteed payment on the trade acceptances to persons not party to the contract of guarantee. As to American, however, since the guarantee covered performance and therefore payment on the trade acceptances, it should be entitled to look for payment from defendant thereon. In relevant part, the agreement states that payment by Kinematix "shall be evidenced by trade acceptances” and, as noted, defendant guaranteed "full performance by Kinematix of all the terms and conditions of this agreement on the part of Kinematix to be performed.” Since defendant guaranteed performance of the terms and conditions of the agreement, which in this respect required payment by means of trade *28 acceptances, the guarantee must be interpreted as including payment according to and as provided in the agreement (Catskill Nat. Bank v Dumary, 206 NY 550, 556). Therefore, as defendant’s undertaking, properly viewed, guaranteed payment evidenced by trade acceptances, despite various assertions to the contrary, an action commenced against defendant by American on the trade acceptances would not be time-barred.
Accordingly, for the reasons stated, the order of the Appellate Division should be reversed, with costs, and defendant’s motion to dismiss the complaint denied.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.