EUROPEAN AMERICAN BANK, Respondent, v ARTHUR LOFRESE, Appellant. (Action No. 1.)

EUROPEAN AMERICAN BANK, Respondent, v COMPETITION MOTORS, LTD., et al., Appellants, et al., Defendants. (Action No. 2.)

Second Department, August 17, 1992

## APPEARANCES OF COUNSEL

*Julian Kaplan,* Great Neck, for Competition Motors, Ltd., and another, appellants.

*Hayt, Hayt & Landau,* Great Neck *(Ralph Pernick* of counsel), for respondent.

## OPINION OF THE COURT

PIZZUTO, J.

The defendant Competition Motors, Ltd. (hereinafter Competition) was an automobile dealership whose stock was owned by the defendants Anthony D'Angelo and John Grecco. In order to obtain the necessary financing for the purchase of new and used vehicles, Competition entered into a type of

financing agreement known as an Automobile Dealer Floor Plan Loan Agreement with the plaintiff, the European American Bank (hereinafter EAB). Under the agreement, EAB, from time to time, made advances to Competition for the purchase of vehicles for retail sale. The vehicles so purchased would then be used as collateral to secure these advances. In addition, Anthony D'Angelo, and his wife Maureen D'Angelo, executed a personal guarantee whereby they "absolutely and unconditionally" guaranteed to make "prompt payment of claims of every nature and description of [EAB] against [Competition] * * * and any and every obligation and liability of [Competition] to [EAB] or another or others of whatsoever nature and howsoever evidenced, whether now existing or hereafter incurred". A paragraph in the personal guarantee provided that termination of the guarantee must be by written notice to the bank. The defendant John Grecco signed a similar guarantee, and it is alleged that his wife Barbara Grecco also signed a similar guarantee.

In October 1987 John Grecco terminated his relationship with Competition and transferred all his stock to Anthony D'Angelo for consideration. However, he failed to apprise EAB of that fact. Subsequent to John Grecco's departure, the defendant Arthur Lofrese joined Competition and became its majority stockholder and president. Anthony D'Angelo became a minority stockholder and vice-president. Upon joining Competition, Lofrese executed a personal guarantee with EAB.

In 1989, EAB commenced the instant actions by motions for summary judgment in lieu of complaint (see, CPLR 3213), alleging that Competition has defaulted in the payment of principal and interest on advances made to it. Annexed to the motion papers were 47 trust receipts and security agreements which EAB alleged evidenced the outstanding loans. EAB also sought to recover the balance due on an installment note. Although the total amount allegedly due differed in the two actions, EAB conceded that it had erroneously or inadvertently failed to credit Competition's account with certain payments made prior to and/or subsequent to the commencement of the actions. It explained that the total unpaid principal due after all payments had been credited was $356,028.72.

Lofrese submitted affidavits in his own behalf and on behalf of Competition in opposition to both actions. In the second action, John Grecco contended, inter alia, that he was not liable, since his association with Competition ended long be-

fore the execution of the trust receipts, security agreements, and installment note sued upon. Barbara Grecco contended that she did not sign any guarantee and that her signature on the document was a forgery.

With respect to Competition, Lofrese, and John Grecco, the Supreme Court granted partial summary judgment on the issue of liability only and set the matter down for a trial on the issue of damages. It denied the motion with respect to Barbara Grecco, noting that she had raised a legitimate question of fact as to whether her signature was a forgery. The D'Angelos are not involved in these appeals.

The Greccos have abandoned their appeal from the orders, and therefore, their appeal is dismissed. However, on the appeals by Competition and Lofrese, we find that both orders were properly made and, therefore, affirm.

■ Lofrese and Competition contend that the 47 instruments sued upon call for something more than the payment of money only and, therefore, motions pursuant to CPLR 3213 were not proper. With respect to Lofrese, such a contention is misplaced, since the action against him is based on the personal guarantee executed by him. The unconditional guarantee executed by him is an instrument for the payment of money only within the meaning of CPLR 3213 (see, *Council Commerce Corp. v Paschalides,* 92 AD2d 579; *Rhodia, Inc. v Steel,* 32 AD2d 753). "A guarantee may be the proper subject of a motion for summary judgment in lieu of complaint whether or not it recites a sum certain. The need to refer to the underlying promissory notes to establish the amount of liability does not affect the availability of CPLR 3213" (*Manufacturers Hanover Trust Co. v Green,* 95 AD2d 737). Under the guarantee, Lofrese "absolutely and unconditionally" undertook to be liable for all liabilities of Competition to EAB "now existing and hereafter incurred". The record does not reveal any irregularity in the guarantee. Lofrese does not deny that the loans were made to Competition. Nor does he deny that Competition defaulted on the loans which are now due and payable. Thus, he failed to raise any viable issue with respect to his liability under the guarantee (see, *Manufacturers Hanover Trust Co. v Green, supra).*

■ The EAB's action against Competition is based on the notes. A note qualifies for treatment under CPLR 3213 as an instrument for payment of money only if the plaintiff can establish a prima facie case via "proof of the note and a

failure to make the payments called for by its terms" *(Seaman-Andwall Corp. v Wright Mach. Corp.,* 31 AD2d 136, 137, *affd* 29 NY2d 617). The 25 "trust receipts" in this case do not make reference to the terms of any other document and, therefore, clearly qualify as instruments for payment of money only within the meaning of CPLR 3213.

■ The 22 "Security Agreements—Wholesale", however, recite that they arise out of a Dealer's Floor Plan Agreement "to which reference is hereby made for a description of the nature and extent of the rights and obligations of the maker and of the payee or holder of this note". While these security agreements make specific reference to the Dealer's Floor Plan Agreement for the rights and obligations of EAB and Competition, they constitute promissory notes, and are self-standing documents establishing EAB's right to payment of the sums stated therein, although that right could be defeated by a showing that EAB had not complied with some condition of the Dealer's Floor Plan Agreement *(see, Lyons v Cates Consulting Analysts,* 88 AD2d 526, *affd* 64 NY2d 1025). A review of the Dealer's Floor Plan Agreement, however, does not indicate that it in any way imposed an obligation on EAB to monitor any corporate official in order to determine whether he or she was embezzling funds. Indeed, the Dealer's Floor Plan Agreement did not impose any obligation on EAB to conduct "floor checks" or to monitor Competition's inventory in any way. Thus, the reference to the Dealer's Floor Plan Agreement in the security agreements did not alter or qualify Competition's obligation to pay *(see, Gittleson v Dempster,* 148 AD2d 578; *Schwartz v Turner Holdings,* 139 AD2d 458). In any event, Competition agreed in the Dealer's Floor Plan Agreement that if at any time it "shall default in any payment due under the Instruments * * * then, and in any such event, all obligations of [Competition] held by [EAB], including all Instruments, shall, at [EAB's] option, become immediately due and payable, notwithstanding any time or credit otherwise allowed and without presentment, demand, protest or notice of any kind, all of which are expressly waived by [Competition]". Since Competition does not allege in any way that it has not defaulted in payment, it has failed to raise any viable defense with respect to its liability under the security agreements.

■ The appellants next contend that they have legitimate and meritorious defenses and counterclaims which are integrally related and, indeed, inseparable from EAB's claims. For

various reasons, the proposed counterclaims and defenses do not absolve Lofrese from liability as a guarantor. As noted earlier, Lofrese "absolutely and unconditionally" guaranteed the prompt payment of claims of every nature and description of EAB against Competition. The guarantee covered any and every obligation and liability of Competition to EAB of whatever nature and however evidenced, secured or not secured, matured or not matured. Having undertaken such a broad guarantee "absolutely and unconditionally", Lofrese waived any defenses and/or counterclaims he might have had *(see, Citibank v Plapinger,* 66 NY2d 90).

■ Assuming, arguendo, that the counterclaims are viable, Lofrese lacks standing to assert them. A defendant who has been sued as a guarantor or surety cannot avail himself, in exoneration of his liability, of a cause of action to recover damages for breach of the contract with his principal *(see, Newton v Lee,* 139 NY 332). "A party when sued upon his obligation cannot avail himself of an independent cause of action existing in favor of his principal against the plaintiff as a defense or counterclaim. It is for the principal to determine what use he will make thereof and the surety has no control over him in this respect" *(Elliott v Brady,* 192 NY 221, 226). Guarantors do not have standing to maintain an action under the Federal Racketeer Influenced and Corrupt Organizations Act (hereinafter RICO) (18 USC § 1961 *et seq.)* because the guarantors suffer only a derivative injury *(see, Mid-State Fertilizer Co. v Exchange Natl. Bank,* 877 F2d 1333).

Moreover, the proposed counterclaims and defenses are irrelevant to the claim against Lofrese. The guarantee executed by him was not dependent upon any condition precedent (such as the conduct of proper "floor checks") other than the payment or nonpayment of the indebtedness *(see, Chemical Bank v PIC Motors Corp.,* 87 AD2d 447, *affd* 58 NY2d 1023).

Lofrese further contends that EAB altered and perverted the contractual arrangement between it and Competition, including but not limited to perpetrating and/or assisting Anthony D'Angelo in criminal conduct to the detriment of Competition and himself as the personal guarantor. He argues that by engaging in the alleged conduct, EAB discharged him of his obligations as guarantor pursuant to the common law and UCC 3-606.

With respect to Lofrese's claim that his obligation is discharged by virtue of UCC 3-606 (1) (b), we only state that

*Chemical Bank v PIC Motors Corp. (supra),* squarely forecloses him from making that argument. Like the guarantor in *PIC Motors,* Lofrese's guarantee of the obligations of Competition was "absolute and unconditional". He guaranteed obligations and liabilities "of whatsoever nature and however evidenced, whether * * * *secured or not secured"* (emphasis added).

Nor may Lofrese rely on any alleged conduct of EAB which constitutes a breach of the Dealer's Floor Plan Agreement (e.g., that EAB made advances in greater sums than that contemplated by the agreement). "While ordinarily the liability of a guarantor will not exceed in scope that of his principal, the guarantee is a separate undertaking and may impose lesser or even greater collateral responsibility on the guarantor" *(American Trading Co. v Fish,* 42 NY2d 20, 26; *see also, Standard Brands v Straile,* 23 AD2d 363). Assuming, arguendo, that the Dealer's Floor Plan Agreement set a limit to the credit which EAB would advance to Competition and then EAB advanced sums far greater than the contemplated limit, that will not discharge Lofrese from his obligations as guarantor since he guaranteed absolutely and unconditionally every obligation and liability of Competition.

■ Nor may Competition be absolved from liability based upon the proposed defenses and/or counterclaims. The alleged violations of 18 USC § 1961 *et seq.,* and the New York State Penal Law are not inherent in its obligations under the Dealer's Floor Plan Agreement, but only collateral to them *(see, Eastman Kodak Co. v GAF Corp.,* 71 AD2d 833; *TNT Communications v Management Tel. Sys.,* 32 AD2d 55, *affd* 26 NY2d 639). Thus, Competition may not assert the alleged violations as defenses *(see, Eastman Kodak Co. v GAF Corp.,* 71 AD2d 833, *supra).*

Nor would it be appropriate to deny partial summary judgment based on the assertion that discovery had not begun when partial summary judgment was granted. The defendants had nothing of an evidentiary nature in their affidavits on the issue of liability. Thus, partial summary judgment was properly granted *(see, Gateway State Bank v Shangri-La Private Club for Women,* 113 AD2d 791, *affd* 67 NY2d 627). Mere hope that somehow there is additional documentary evidence in EAB's possession which will prove improper loans provides no basis, pursuant to CPLR 3212 (f), for postponing a decision on the summary judgment motions *(see, Kennerly v Campbell Chain Co., Campbell Chain Div. McGraw-Edison Co.,* 133 AD2d 669; *Babcock v Allan,* 115 AD2d 297).

Accordingly, the appeal by John Grecco and Barbara Grecco from the order dated March 2, 1990, is dismissed as abandoned, the order dated March 1, 1990, is affirmed insofar as appealed from, and the order dated March 2, 1990, is affirmed insofar as appealed from by the defendant Competition Motors, Ltd.

BALLETTA, J. P., MILLER and SANTUCCI, JJ., concur.

Ordered that the appeal by John Grecco and Barbara Grecco from the order dated March 2, 1990, is dismissed as abandoned; and it is further,

Ordered that the order dated March 1, 1990, is affirmed insofar as appealed from; and it is further,

Ordered that the order dated March 2, 1990, is affirmed insofar as appealed from by the defendant Competition Motors, Ltd.; and it is further,

Ordered that the plaintiff is awarded one bill of costs, payable by the appellants Competition Motors, Ltd., and Arthur Lofrese.