[622 NYS2d 232]

JAMES W. WETZLER, as Commissioner of Taxation and Finance of the State of New York, et al., Respondents, v ROOSEVELT RACEWAY, INC., Appellant, et al., Defendant.

JAMES W. WETZLER, as Commissioner of Taxation and Finance of the State of New York, et al., Respondents-Appellants, v ROOSEVELT RACEWAY, INC., Appellant-Respondent, et al., Defendant.

JAMES W. WETZLER, as Commissioner of Taxation and Finance of the State of New York, et al., Respondents-Appellants, v ROOSEVELT RACEWAY, INC., Appellant-Respondent, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellant.

First Department, January 10, 1995

### APPEARANCES OF COUNSEL

*Frederic L. Lieberman* of counsel, New York City *(Dennis C. Vacco, Attorney-General,* attorney), for plaintiffs.

*Edward Rubin* of counsel, New York City *(Marc S. Orlofsky* and *Lori A. Corsun* with him on the brief; *Alan J. Garfunkel* and *Edward Rubin,* attorneys), for Roosevelt Raceway, Inc., defendant.

*Lewis Stockman* of counsel, New York City *(Hart & Hume,* attorneys), for National Union Fire Insurance Company of Pittsburgh, Pa., defendant.

### OPINION OF THE COURT

RUBIN, J.

This is an action to recover unpaid taxes brought by the Commissioner of Taxation and the State of New York against defendant Roosevelt Raceway, Inc. (Roosevelt). It is alleged that Roosevelt took unauthorized credits against taxes due pursuant to section 318 of the Racing, Pari-Mutuel Wagering and Breeding Law. Defendant National Union Fire Insurance Company furnished a bond to Roosevelt, pursuant to section 315 of the statute, to secure performance of Roosevelt's obligation to comply with the law, including the payment of taxes.

Roosevelt ceased operation in June 1988. Some five months later, by determination dated November 28, 1988, plaintiff Tax Commissioner notified Roosevelt of deficiencies for the tax years 1985 and 1986 in the amounts of $25,269 and $137,239, respectively. Subsequently, by determination dated January 26, 1989, the Commissioner notified Roosevelt of similar deficiencies for 1987 and 1988 in the amounts of $226,418 and $39,924, respectively. Roosevelt filed a request for a hearing on the assessments on April 28, 1989. The Bureau of Conciliation and Mediation determined the hearing request to be untimely as to the deficiencies for 1985 and 1986, and Roosevelt sought no further administrative review with respect to these asserted deficiencies.

On September 27, 1989, the Bureau conducted a hearing

with respect to the tax deficiencies claimed for 1987 and 1988. It found Roosevelt's application for a hearing untimely with respect to these years also. Upon further review, however, the Division of Tax Appeals, in a determination dated March 14, 1991, found that the Commissioner lacks statutory authority to utilize administrative procedures to collect taxes owed by virtue of Racing, Pari-Mutuel Wagering and Breeding Law § 318 and dismissed the proceeding. The Administrative Law Judge noted that the Commissioner's recourse is to seek to collect the taxes in a plenary action (citing *Matter of Parsons v State Tax Commn.*, 34 NY2d 190).

The instant lawsuit was instituted against Roosevelt and National Union Fire Insurance Company by service of a summons and complaint dated December 18, 1989. The original complaint sought to recover alleged tax deficiencies for the years 1985 and 1986, together with interest and penalties. The Tax Commissioner did not appeal the subsequent determination of the Division of Tax Appeals dated March 14, 1991 dismissing the administrative proceedings, but instead moved to amend the complaint in this action to include tax deficiencies claimed to have become due and payable during 1987 and 1988.

Roosevelt contends that the court should not have permitted the Tax Commissioner and the State to amend the complaint. Roosevelt advances two arguments in support of this position: first, that the additional claims must be considered untimely because they arise from an obligation imposed by statute and are therefore subject to the three-year Statute of Limitations of CPLR 214 (2); second, that they are lacking in merit because the Racing, Pari-Mutuel Wagering and Breeding Law does not contain any provision for collection of the tax due under section 318 of the statute. Roosevelt asserts that, because taxing statutes are subject to strict construction, plaintiffs have no authority to institute this action. Therefore, it concludes, Supreme Court erred, in the first order subject to appeal, in permitting plaintiffs to amend their complaint to add claims for tax deficiencies for 1987 and 1988 and, in the second order, in failing to grant its motion to dismiss the added claims as untimely.

Plaintiffs also appeal from so much of the second order as dismissed their claims for taxes accruing before December 20, 1986, three years prior to the date the action was commenced. They argue that their claims are exempt from the operation of CPLR 214 (2) because the power to tax existed at common law.

Plaintiffs further assert that, because they are acting in the capacity of the sovereign, they are exempt from the operation of the Statute of Limitations entirely.

■ Defendant National Union Fire Insurance Company appeals from a third order that granted plaintiffs' motion for reargument and thereupon reinstated claims against National, as surety, for tax liability that accrued against Roosevelt during 1985 and 1986. National contends that, because claims arising during this period were dismissed against Roosevelt as untimely, National can have no greater liability than that imposed upon its principal under the Racing, Pari-Mutuel Wagering and Breeding Law.

This matter was argued and decided upon general principles of common law with little reliance being placed upon the taxing statutes by any party. In imposing greater liability against the surety than against Roosevelt, the transgressor in violation of its statutory obligation, Supreme Court relied on *Bulova Watch Co. v Celotex Corp.* (46 NY2d 606) and *American Trading Co. v Fish* (42 NY2d 20). However, the application of cases dealing with purely contractual obligations to circumstances that involve the performance of duties imposed by statute is troubling for several reasons.

The first point is simply that the obligation imposed on the insurer in this matter is, as the liability imposed on Roosevelt, a creature of statute, specifically a taxing statute (Racing, Pari-Mutuel Wagering and Breeding Law § 315). As such, it would be expected that the applicable Statute of Limitations would be found in the taxing statute or, if none is provided, that the limitation of CPLR 214 (2) would apply.

Second, the rationale of the cases relied upon rests on the distinction between a contractual obligation assumed by the guarantor and that undertaken by the principal. In *American Trading Co. v Fish (supra,* at 27), the Court noted that the "defendant's guarantee was an undertaking separate from the sales arrangement itself * * * In light of this, it is appropriate to treat the guarantee as an obligation separate and distinct from, rather than subsumed by, the underlying contract of sale." Similarly, in *Bulova Watch Co. v Celotex Corp. (supra,* at 610), involving 20-year bonds that guaranteed the performance of materials used in a roof, the Court stated, "The bonds embody an agreement distinct from the contract to supply roofing materials." In the case at bar, by contrast, the liability assumed by the surety in furnishing the bond is

required by the Racing, Pari-Mutuel Wagering and Breeding Law (§ 315) and is coextensive with the obligation imposed on the principal (§ 318). Therefore, there is no basis for departure from the rule acknowledged in *American Trading Co. v Fish (supra,* at 26) that "ordinarily the liability of a guarantor will not exceed in scope that of his principal".

Finally, the nature of the obligation imposed by statute upon the surety is not contractual and cannot be imposed by contract as a matter of public policy. The statute designates the undertaking represented by the bond as "a penalty to be fixed by the state tax commission not exceeding two hundred fifty thousand dollars" (Racing, Pari-Mutuel Wagering and Breeding Law § 315). It is well settled that the imposition of a penalty is exclusively the prerogative of the sovereign and that a contractual provision that operates as a penalty is unenforceable *(City of Rye v Public Serv. Mut. Ins. Co.,* 34 NY2d 470, 472-473; *X.L.O. Concrete Corp. v Brady & Co.,* 104 AD2d 181, 183, *affd* 66 NY2d 970). A bond given to secure payment of a penalty is an obligation created or imposed by statute, not by contract, and therefore should not automatically be subject to the limitation period applicable to actions arising under contract (CPLR 213).

█ Likewise, plaintiffs' argument that the obligation to pay taxes was a liability existing at common law, rather than one which would not exist but for a statutory provision, is unpersuasive. It is not dispositive that the obligation to pay taxes generally existed at common law, thereby rendering the enactment merely a codification of a common-law duty *(see, Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169, 173-174). What is controlling is that the obligation to pay *this tax* did not exist at common law. The extensive statutory scheme for the regulation and taxation of harness racing (Racing, Pari-Mutuel Wagering and Breeding Law art III) has no parallel at common law, and the provision for taxation of this activity is a liability clearly imposed by legislation.

█ The authority relied upon by Roosevelt to support its contention that plaintiffs lack authority to collect the taxes alleged to be owed is no more compelling. *Yonkers Racing Corp. v State of New York* (131 AD2d 565) dealt with the power of the New York State Racing and Wagering Board to impose a tax on simulcast transmissions of harness races to Connecticut off-track betting facilities. In determining that the Board lacked authority to tax such transmissions, the Appellate Division, Second Department, emphasized that the statute

authorized the collection of such a tax but failed to set forth the appropriate tax rate. Applying the principle that a tax statute is "construed most strongly against the government and in favor of the taxpayer", the Court concluded that "a tax statute may not be extended by implication beyond the clear import of the language used" to permit the Board to set the tax rate *(supra,* at 567).

In advancing this authority, Roosevelt confuses the power to impose a tax with the power to collect a tax due pursuant to statute. The power to impose a tax and resort to procedures for collection of taxes and assessments have long been subject to strict construction *(Sharp v Speir,* 4 Hill 76 [1843]; *Newell v Wheeler,* 48 NY 486 [1872]). However, this matter presents no question with respect to the imposition of the tax, which is indisputably based upon an act of the Legislature. Racing, Pari-Mutuel Wagering and Breeding Law § 318 (1) (a) (i) provides that a harness track "shall pay to the commissioner of taxation and finance as a reasonable tax for the privilege of conducting pari-mutuel betting at races run at race meetings held by such corporation or association, a tax, which is hereby levied, at the following rates" (which are set forth in considerable detail).

As to the power to collect the tax, Roosevelt contends that the omission of procedures in the Racing, Pari-Mutuel Wagering and Breeding Law for collection of the tax imposed precludes plaintiffs from any attempt to enforce the provision, including the maintenance of a plenary action. In opposition to this argument, plaintiffs do not identify any express grant of power authorizing them to collect the tax but place their reliance on the inherent power of the State. They argue that "the State, as sovereign and not a creation of the Legislature, has undoubted authority to collect the tax and does not require a delegation of authority from the Legislature to act in its own behalf." However, this position is contrary to the principle, noted above, that taxing statutes are strictly construed in favor of the taxpayer.

The power of plaintiffs to collect the tax and the Statute of Limitations governing the imposition of the tax are both found in the Tax Law, although the derivation of that authority is not immediately apparent from the language of the Racing, Pari-Mutuel Wagering and Breeding Law. The Legislative intent gleaned from an analysis of the applicable taxing statutes is that collection of the tax imposed by section 318 of the Racing, Pari-Mutuel Wagering and Breeding Law is to be

governed by the procedure set forth in the Tax Law. Apart from a recital that proceeds of the tax shall be paid to the State Tax Commissioner and, upon collection, paid into the general fund of the State Treasury (Racing, Pari-Mutuel Wagering and Breeding Law § 318 [2]), the Racing, Pari-Mutuel Wagering and Breeding Law is largely devoid of administrative provisions, which are instead found in Tax Law article 27, entitled "Corporate Tax Procedure and Administration" (§§ 1080-1097).

Tax Law § 203 (1) provides: "An action may be brought by the attorney-general, at the instance of the tax commission, in the name of the state, to * * * recover the amount of any taxes, fees, penalties and interest due pursuant to this article." Granting that "this article" refers to the Tax Law and not the Racing, Pari-Mutuel Wagering and Breeding Law, it should be noted that the tax imposed pursuant to section 318 of the Racing, Pari-Mutuel Wagering and Breeding Law is "for the privilege of conducting pari-mutuel betting" by a corporation organized pursuant to section 302 of that statute. Applying the statutory construction rule of *noscitur a sociis,* the use of the word "privilege" in conjunction with the conduct of business by a corporation has a direct parallel in the Tax Law *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 239 [a]). Pursuant to Tax Law § 209 (1), a tax levied upon a business "[f]or the privilege of exercising its corporate franchise, or of doing business" is a franchise tax. It is payable unless the corporation is exempted under subdivision (4) of that provision, which is subject to strict construction against the grant of an exemption *(see, Matter of Blue Spruce Farms v New York State Tax Commn.,* 99 AD2d 867, *affd* 64 NY2d 682).

A corporation organized "for the purpose of conducting harness horse race meetings at which pari-mutuel betting will be conducted" (Racing, Pari-Mutuel Wagering and Breeding Law § 302) is not one that is expressly exempt from the operation of the franchise tax (Tax Law § 209 [4]). Moreover, it was recognized long before the enactment of the present statute that an entity subject to the franchise fee imposed by the law governing horse racing is potentially subject to the franchise fee imposed by the Tax Law. A 1957 opinion of the Attorney-General concluded that, in such circumstances, a nonprofit racing association was subject only to the franchise fee imposed by the law regulating its activities (1957 Opns Atty Gen 286). The construction of a taxing provision so as to

avoid double taxation *(Matter of Bay View Towers Apts. v State Tax Commn.,* 48 AD2d 86, *affd* 40 NY2d 856) does not, however, require abrogation of the general rule that a tax law is to be construed in favor of the collection of all taxes on the basis of any theory supporting it *(County of Nassau v Lincer,* 254 App Div 746, *affd* 280 NY 662).

Implicit in the position advanced by Roosevelt is that the Racing, Pari-Mutuel Wagering and Breeding Law supplants and supersedes the Tax Law. Roosevelt argues that, because the Racing, Pari-Mutuel Wagering and Breeding Law contains explicit authority and procedures for the collection of State and local admission taxes (§ 306; §§ 803, 808, respectively) and omits both authority and procedure with respect to the collection of taxes due pursuant to section 318, plaintiffs are therefore without power to collect the franchise tax or to maintain this action.

Of greater significance is the Tax Commissioner's power to collect franchise taxes from corporations under the Tax Law and the lack of any exemption from the franchise tax for a corporation engaged in the business of horse racing (Tax Law § 209 [4]). The better view is that, in omitting procedures for the collection of the franchise fee imposed by the Racing, Pari-Mutuel Wagering and Breeding Law, the Legislature demonstrated the intent that collection of the tax is to be governed by the provisions of the Tax Law. Therefore, the Racing, Pari-Mutuel Wagering and Breeding Law should be read together with the Tax Law, wherever possible, and the provisions of the Racing, Pari-Mutuel Wagering and Breeding Law should control where the taxes it imposes are distinct from and in addition to those contained in the Tax Law, such as State and local admission taxes, or where the respective provisions are irreconcilable or lead to an unjust result, such as double taxation. This approach carries out the legislative intent to impose the tax and avoids the absurd result, advocated by Roosevelt, that the Legislature has provided for a tax that is uncollectible. As this Court stated in *Matter of Friedman-Kien v City of New York* (92 AD2d 827, 828-829, *affd* 61 NY2d 923), "The courts will not construe statutes, or rules and regulations of a government agency in such a manner as to thwart the obvious legislative intent and reach absurd and unexpected consequences. *(Matter of Chatlos v McGoldrick,* 302 NY 380, 387-388; McKinney's Cons Laws of NY, Book 1, Statutes, §§ 92, 145, 147.)"

■ ■ By statute, proceedings brought to recover unpaid franchise taxes are generally exempt from the operation of

CPLR article 2 (Tax Law § 219) and, thus, are not subject to either the three-year period of limitation controlling penalties imposed by statute (CPLR 214 [2]) or the six-year period controlling contract actions (CPLR 213). The Tax Law provides that the Attorney-General may bring an action to recover unpaid taxes, additions to taxes, penalties, and interest assessed "within six years prior to the date the action is commenced" (Tax Law § 1092 [h]). This action is therefore timely with respect to all unpaid assessments sought to be recovered from defendant Roosevelt Raceway.

The language of Tax Law § 1092 (h) is equally applicable to an action against the surety furnishing a bond to guarantee payment of the penalty imposed pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 315. Defendant National Union Fire Insurance Company is correct in its contention that the bond is "part and parcel of the statutory scheme imposing the taxes upon Roosevelt Raceway, and, accordingly, if the State's claims are barred against Roosevelt Raceway, they are barred against its surety." By the same token, if the claims are timely as to the principal, they are also timely as to the surety.

While it is not material to the determination of this appeal, it should be observed that the result reached by this Court does not support the conclusion drawn by the Division of Tax Appeals. Article 27 of the Tax Law sets forth detailed administrative procedures for the collection of corporate taxes (§ 1092 *et seq.*) and provides for a system of administrative review (§§ 1089, 1090). It logically follows from the holding of this Court that these procedures are available to the Tax Commissioner in the administration of any tax imposed upon the exercise of a corporate franchise, including the collection of taxes, penalties, and interest required to be paid over to the Commissioner for the privilege of holding harness races at which pari-mutuel betting is conducted.

Accordingly, the order of the Supreme Court, New York County (Joan Lobis, J.), entered June 11, 1992, which granted plaintiffs' motion to amend their complaint to include alleged tax deficiencies for the years 1987 and 1988 in addition to deficiencies sought to be recovered for the years 1985 and 1986, should be affirmed, without costs. The order of same court and Justice, entered January 26, 1993, which granted defendant Roosevelt Raceway, Inc.'s motion to dismiss the complaint as time barred to the extent of dismissing any

claims that arose prior to December 20, 1986, should be reversed, on the law, to the extent appealed from, and the claims arising prior to December 20, 1986 reinstated without costs. The order of same court and Justice, entered September 27, 1993, which granted plaintiffs' motion to reargue and, *inter alia,* reinstated plaintiffs' claims against defendant surety for deficiencies incurred during the years 1985 and 1986, should be affirmed, without costs.

WALLACH, J. P., ROSS, NARDELLI and TOM, JJ., concur.

Orders, Surpeme Court, New York County, entered June 11, 1992 and September 27, 1993, affirmed, without costs, and order, same court and Justice, entered January 26, 1993, reversed, on the law, to the extent appealed from, without costs, and the claims arising prior to December 20, 1986 reinstated.