COWEN, concurring in part and dissenting in part.
 

 I join in full Parts II and Parts III.A.1, III.A.3, III.B, and III.C of the majority opinion, and I agree that we must vacate the District Court's permanent injunction. I also join Part III.A.2 insofar as the majority determines that "the District Court was mistaken in concluding that the letter agreement vested ownership in the Bank by deeming the manuscript a work for hire." (Majority Opinion at 273.) However, I must respectfully dissent from Part III.A.2's assignment analysis. TD Bank has waived this assignment issue, and, in any event, Hill's commitments fail to "convey an unmistakable intent to effect a present transfer of any interest he possessed in the manuscript" (
 
 id.
 
 at 275). Accordingly, I would vacate the District Court's grant of summary judgment on the threshold question of ownership and remand for further proceedings.
 

 "[W]e may affirm on any basis supported by the record, even if it departs from the District Court's rationale." (
 
 Id.
 
 at 270 (citing
 
 Erie Telecomms., Inc. v. City of Erie
 
 ,
 
 853 F.2d 1084
 
 , 1089 & n.10 (3d Cir. 1988) ).) "However, this rule does not apply to cases in which the party has waived the issue in the district court."
 
 Holk v. Snapple Beverage Corp.
 
 ,
 
 575 F.3d 329
 
 , 335 (3d Cir. 2009). "This Court has stated: 'We may affirm the lower court's ruling on different grounds, provided the issue which forms the basis of our decision was before the lower court.' "
 

 Id.
 

 at 335-36
 
 (quoting
 
 Morse v. Lower Merion Sch. Dist.
 
 ,
 
 132 F.3d 902
 
 , 904 n.1 (3d Cir. 1997) ). A review of "the record" in this case reveals that TD Bank has intentionally and knowingly abandoned the issue of assignment.
 
 See, e.g.
 
 ,
 
 Robinson v. First State Cmty. Action Agency
 
 ,
 
 920 F.3d 182
 
 , 187 (3d Cir. 2019) (" 'Waiver is the 'intentional relinquishment or abandonment of a known right.' " (quoting
 
 Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.
 
 ,
 
 877 F.3d 136
 
 , 147 (3d Cir. 2017) )).
 

 It is undisputed that TD Bank failed to argue below that, even if the 2007 manuscript does not rise to the level of a work for hire, Hill assigned any interest he may have had in the manuscript to Commerce Bank. But TD Bank did more than merely fail to raise a particular issue. It affirmatively conceded that the letter "is not an assignment."
 

 In "Plaintiffs' Responses to Defendant's First Set of Requests for Admissions," TD Bank made the following admission:
 

 26. Admit that Mr. Hill never signed a document or any other writing assigning right, title or interest in the Unpublished Manuscript to Commerce.
 

 OBJECTION:
 
 Plaintiff objects as "any other writing" is vague and is nowhere defined and requires Plaintiff to speculate as to meaning.
 

 RESPONSE:
 
 Subject to the foregoing objection and without waiving the same, admitted to the extent that the Guaranty is not an assignment but rather an acknowledgement that Commerce is the
 
 initial
 
 owner of the copyright in the Unpublished Manuscript.
 

 (JA1307;
 
 see also
 

 id.
 

 (making same objection and response to request to admit that Hill never signed document or any other writing assigning right, title, or interest to TD Bank).)
 

 TD Bank thereby admitted that the letter is not an assignment but rather an acknowledgement that Commerce Bank has always been the copyright owner from (to borrow language from TD Bank's appellate brief) "day one" pursuant to the work-for-hire doctrine (Appellee's Brief at 37). "The purpose of [Federal Rule of Civil Procedure] 36(a) is to narrow the issues for trial to those which are genuinely contested."
 
 United Coal Cos. v. Powell Constr. Co.
 
 ,
 
 839 F.2d 958
 
 , 967 (3d Cir. 1988) (citing
 
 Webb v. Westinghouse Elec. Corp.
 
 ,
 
 81 F.R.D. 431
 
 , 436 (E.D. Pa. 1978) ;
 
 United States v. Watchmakers of Switzerland Info. Ctr., Inc.
 
 ,
 
 25 F.R.D. 197
 
 , 201 (S.D.N.Y. 1959) ). TD Bank did not deny Hill's request for admission.
 
 See, e.g.
 
 ,
 

 id.
 

 ("Where, as here, issues in dispute are requested to be admitted, a denial is a perfectly reasonable response."). In fact, TD Bank responded to similar admission requests by denying them, quoting or referencing, inter alia, the letter, and asserting that the document spoke for itself. It also could have answered in the alternative if it really believed that the letter could be considered an assignment. For instance, it could have stated that, while the document constitutes an acknowledgement of Commerce Bank's initial ownership, "the Guaranty is an assignment" to the extent Commerce Bank is not considered to be the initial owner. But it did not do so. Instead of leaving open the possibility that it became the copyright owner by means of a transfer or assignment from the original owner (or co-owner), TD Bank went so far as to emphasize the term "initial" in "the
 
 initial
 
 owner." Similarly, "Plaintiff's Response to Defendant's Rule 56.1 Statement of Material Facts Not in Dispute In Support of Cross-Motion for Partial Summary Judgment" stated: "Undisputed that the Guaranty does not contain such an express provision [in which Mr. Hill assigned any right, title, or interest in the Unpublished Manuscript to Commerce]." (JA1388). "Disputed that the lack of such a provision provides Mr. Hill with any ownership interest in the copyright in the 2007 Manuscript." (
 
 Id.
 
 (citing JA477, JA1139).)
 

 TD Bank's pattern of failing to raise or contest the issue of assignment has continued on appeal.
 

 In his opening appellate brief, Hill argues at some length that the District Court erred in relying on the letter. "The only inquiry to which these contracts might be relevant is whether, after Mr. Hill's ownership vested, he executed an agreement transferring the copyright after creation, in accordance with
 
 17 U.S.C. § 204
 
 ." (Appellant's Brief at 47-48 (citing
 
 Brownstein v. Lindsay
 
 ,
 
 742 F.3d 55
 
 , 68 (3d Cir. 2014) ).) Citing to TD Bank's Responses to Defendant's First Set of Requests for Admissions, Hill asserts that "TD Bank concedes that no such writing exists," which, in turn, purportedly entitles him to judgment as a matter of law. (
 
 Id.
 
 at 48 (citing JA1307).) According to Hill, the District Court, among other things, failed to analyze the statutory writing requirement, acknowledge TD Bank's admission, properly apply New York's contract law in its consideration of the letter and the publishing agreement, or recognize that there is a presumption against transfers of copyright ownership unless they are clearly
 stated. In the process, Hill (indirectly) cites TD Bank's Response to Defendant's Rule 56.1 Statement of Material Facts Not in Dispute In Support of Cross-Motion for Partial Summary Judgment. (
 
 See
 

 id.
 

 ("In fact, there is no evidence of
 
 any
 
 agreement over copyright ownership between Commerce and Mr. Hill, whose signatures never appear on the same contract." (citing JA1586)).)
 

 Faced with these assertions, one would expect TD Bank to respond (at least in the form of an alternative argument) that Hill did assign any interest he may have had in the manuscript pursuant to § 204 and New York law. At the very least, it would be expected that a litigant would deny an adversary's concession assertion if it truly believed that no such thing had occurred. Yet TD Bank does nothing of the sort. Instead, it simply characterizes Hill's contention "[t]hat '[t]he Guaranty never says that Mr. Hill agrees to transfer exclusive ownership to Commerce' " as "a basic mistake regarding the Copyright Act's 'work made for hire' provision." (Appellee's Brief at 37 (quoting Appellant's Brief at 48).) "Because the 2007 Manuscript was a 'work made for hire,' (
 
 see
 
 [
 
 id.
 
 at 39-47] ), TD Bank is the work's statutory 'author' and sole copyright owner on day one,
 
 17 U.S.C. § 201
 
 (b), and no transfer to TD Bank is required." (
 
 Id.
 
 ) According to TD Bank, it is actually Hill's obligation to produce a written agreement transferring ownership to him.
 

 TD Bank did not argue that there was any assignment from Hill to Commerce Bank until oral argument, after this Court directed the parties to be prepared to discuss this issue of whether the letter constitutes a valid assignment under New York law and the Copyright Act. I do not believe it is appropriate for us to overlook what TD Bank (an obviously sophisticated litigant represented by able counsel) has done-and not done-regarding the issue of assignment throughout the course of this litigation. Recently, this Court considered a party's course of conduct to decide that it had waived its objection to a particular jury instruction.
 
 See, e.g.
 
 ,
 
 Robinson
 
 ,
 
 920 F.3d at 184
 
 ("We hold that First State has waived this argument because of its continued acquiescence to Robinson's case theory, its encouragement of the adoption of the very jury instruction to which it now objects, and its failure to include this error in its post-trial briefing."). In turn, the ground upon which
 
 Erie Telecommunications
 
 relied was raised in one of the appellee's affirmative defenses, summarily rejected by the district court, and then addressed in the brief that the appellee filed on appeal.
 
 Erie Telecomms.
 
 ,
 
 853 F.2d at
 
 1088 & n.8, 1094 n.16. Given its concession below that the letter is not an assignment as well as its dismissal on appeal of Hill's own assignment assertions, TD Bank has waived the assignment issue.
 

 Assuming arguendo that the issue of assignment is properly before us, I do not agree with the majority's conclusion that Hill's letter meets the legal requirements for an assignment of a copyright interest. As the majority recognizes, "courts do not lightly infer that a party has assigned his interest in a copyright, particularly given the Copyright Act's writing requirement, and in doubtful cases, a document should not be construed to divest an author completely of his ownership interest." (Majority Opinion at 275 (citing
 
 Baisden v. I'm Ready Prods., Inc.
 
 ,
 
 693 F.3d 491
 
 , 500 (5th Cir. 2012) ;
 
 Radio Television Espanola S.A. v. New World Entm't, Ltd.
 
 ,
 
 183 F.3d 922
 
 , 927 (9th Cir. 1999) ;
 
 Playboy Enters., Inc. v. Dumas
 
 ,
 
 53 F.3d 549
 
 , 564 (2d Cir. 1995) ).) Under applicable New York law, a contract is unambiguous if its language possesses " 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and
 concerning which there is no reasonable basis for a difference of opinion.' "
 
 Greenfield v. Philles Records, Inc.
 
 ,
 
 98 N.Y.2d 562
 
 ,
 
 750 N.Y.S.2d 565
 
 ,
 
 780 N.E.2d 166
 
 , 170-11 (2002) (quoting
 
 Breed v. Ins. Co. of N. Am.
 
 ,
 
 46 N.Y.2d 351
 
 ,
 
 413 N.Y.S.2d 352
 
 ,
 
 385 N.E.2d 1280
 
 , 1282 (1978) ).
 

 The letter here is doubtful and ambiguous.
 

 According to the majority, "Hill's commitments together convey an unmistakable intent to effect a present transfer of any interest he possessed in the manuscript." (
 
 Id.
 
 at 275.) I agree that no specific language is necessary to satisfy the requirements for an effective assignment under state and federal law.
 
 See, e.g.
 
 ,
 
 Radio Television Espanola
 
 ,
 
 183 F.3d at 927
 
 ("No magic words must be included in a document to satisfy § 204(a).");
 
 Deutsche Bank Nat'l Trust Co. v. Romano
 
 ,
 
 147 A.D.3d 1021
 
 , 1023,
 
 48 N.Y.S.3d 237
 
 (N.Y. App. Div. 2017) (observing that no special language or formalities are necessary to effect assignment). Nevertheless, the assignor must in some fashion have " '
 
 manifested an intention to make a present transfer of his rights to the assignee.
 
 ' "
 
 Deutsche Bank
 
 ,
 
 147 A.D.3d at 1023
 
 (quoting 9-47 Corbin on Contracts § 47.7);
 
 see, e.g.
 
 ,
 
 Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC
 
 ,
 
 477 F.3d 383
 
 , 391 (6th Cir. 2007) ("Nevertheless, '[s]o long as the parties' intent is clear, a transfer of copyright need not include any particular language.' " (quoting
 
 Gilleland v. Schanhals
 
 ,
 
 55 F. App'x 257
 
 , 260 (6th Cir. 2003) ). According to the Ninth Circuit:
 

 Section 204 's writing requirement is not unduly burdensome; it necessitates neither protracted negotiations nor substantial expense. The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do.
 

 Effects Assocs., Inc. v. Cohen
 
 ,
 
 908 F.2d 555
 
 , 557 (9th Cir. 1990).
 

 Neither the letter nor the publishing agreement included "a one-line pro forma statement." Specifically, the documentation at issue here did not state that Hill is assigning, transferring, or granting his copyright interest in the manuscript to Commerce Bank-nor did it say that such an assignment, transfer, or grant had already occurred (or would take place in the future).
 
 See, e.g.
 
 ,
 
 Baisden
 
 ,
 
 693 F.3d at 500
 
 ("That [royalty] check merely states that it was for '
 
 Men Cry in the Dark
 
 Fall 2005 Royalties (Paid in Full).' The check does not expressly refer to an assignment of copyrights.
 
 See
 
 [
 
 Playboy Enters.
 
 ,
 
 53 F.3d at
 
 564 ] (applying clearly erroneous standard and deferring to district court's determination that check for past 'assignment ... of all rights, title and interest' was insufficient to transfer copyrights)."). Certainly, the inclusion of this sort of language would have dispelled doubt and "convey an unmistakable intent" to effect a transfer (
 
 id.
 
 at ----). Although not strictly required as a matter of law (
 
 see
 

 id.
 

 at 274-75 n.8), the existence of a document executed by the putative assignor and assignee would also have been stronger evidence of an assignment than what we have here, i.e., a publishing agreement executed by Commerce Bank and Portfolio, and a letter signed by Hill addressed to Portfolio.
 

 In turn, Hill's letter to Portfolio and the publishing agreement between Commerce Bank and Portfolio could be reasonably read as indicating that there was no copyright assignment. As the majority explains, the letter consists of two principal covenants: (1) "Hill acknowledged the publishing agreement, a copy of which was attached to the letter, and 'guarantee[d], promise[d] and agree[d] with the Publisher
 ... that the Author [i.e., Commerce Bank] will, in all respects, faithfully perform and fulfill all obligations of the Agreement' " (
 
 id.
 
 at 274 (quoting JA1139)); and (2) "Hill 'unconditionally guarantee[d] that the Work is a work made for hire within the meaning of the United States Copyright Law and that the Author is the owner of copyright in the Work and has full power and authority to enter into the Agreement' " (id. (quoting JA1139)). "That publishing agreement provided that 'the Author [i.e., Commerce Bank] is the sole and exclusive owner of all rights granted to the Publisher in this Agreement and has not assigned, pledged or otherwise encumbered the same; ... that the Author has full power to enter into this Agreement and to make the grants herein contained.' " (
 
 Id.
 
 (quoting JA1142).) The documentation thereby indicates that the letter itself constitutes a guarantee as opposed to an assignment-and that Commerce Bank "is the work's statutory 'author' and sole copyright owner on day one and no transfer to [Commerce Bank] is required" (Appellee's Brief at 37 (citation omitted)).
 

 According to the majority, the latter provisions of the letter do not resemble a true guarantee. But it also acknowledges that Hill's commitment guaranteeing, promising, and agreeing that Commerce Bank would fulfill its obligations "could by itself suggest a guarantee" (Majority Opinion at 274-75). While not dispositive, the repeated use of this sort of "guarantee" language (at the very least) represents a highly unconventional expression of an intent to effect a transfer. Furthermore, the cited cases did not consider whether the "guarantee" at issue actually constituted an assignment under New York law.
 
 See, e.g.
 
 ,
 
 N.Y. Plumber's Specialties Co. v. 91 E. End Corp.
 
 ,
 
 42 N.Y.2d 865
 
 ,
 
 397 N.Y.S.2d 778
 
 ,
 
 366 N.E.2d 866
 
 , 867 (1977) ("Although described as a guarantee this writing is actually an agreement or promise to pay appellant's own obligation for purchases made on its own account." (quoting
 
 Deeves & Son v. Manhattan Life Ins. Co.
 
 ,
 
 195 N.Y. 324
 
 ,
 
 88 N.E. 395
 
 , 396 (1909) ));
 
 Brewster Transit Mix Corp. v. McLean
 
 ,
 
 169 A.D.2d 1036
 
 , 1037,
 
 565 N.Y.S.2d 316
 
 (N.Y. App. Div. 1991) ("Despite the parties' use of the word guarantee, we are of the view that the nature of defendant's obligation is the same as that of his corporation and, therefore, the only reasonable interpretation of the writing is that which makes defendant a co-obligor of his corporation's debts to plaintiff, not a guarantor of the payment of those debts." (citing
 
 Am. Trading Co. v. Fish
 
 ,
 
 42 N.Y.2d 20
 
 , 24,
 
 396 N.Y.S.2d 617
 
 ,
 
 364 N.E.2d 1309
 
 (1977) )). Even if parts of the letter do not really look like a typical guarantee (i.e., an agreement to pay a principal obligor's debt upon the principal obligor's default), the same could be said with respect to the letter's resemblance to an assignment, especially given what the document did not say (and what it did). In fact, Hill stated in the letter that "I have an interest in the Author [Commerce Bank] and in having the Work published by the Publisher," and thereby made these guarantees "as an inducement to the Publisher to enter into the Agreement." (JA1139.) He clearly wanted the book to be published as opposed to expressing any sort of interest in effecting an assignment of his existing copyright interest to his employer. In fact, I question whether he was really concerned with the intricacies of copyright assignment and the work-for-hire doctrine in the first place.
 

 Finally, the differences between assignment and the concept of a work for hire weigh against the majority's assignment determination. The agreement and the letter could be reasonably read as acknowledging that Commerce Bank was always the exclusive owner of the manuscript as a work for hire. After all, the letter basically said as much, unconditionally guaranteeing
 that the manuscript "is a work made for hire within the meaning of the United States Copyright Law and that the Author is the owner of copyright in the Work and has full power and authority to enter into the Agreement." (JA1139.) Commerce Bank warranted in the publishing agreement that it "is the sole and exclusive owner of all rights granted to the Publisher in this Agreement" and "has full power to enter into this Agreement and to make the grants herein contained." (JA1142.) The majority asserts that, although Hill's assurance that the manuscript is a work made for hire is insufficient to make it one, this assurance nevertheless "denotes an intent to relinquish his interest in the copyright." (Majority Opinion at 275 (citing 1
 
 Nimmer on Copyright
 
 § 5.03[B][1][b][ii] )).) However, assignment and work for hire are two different concepts. As I have already explained in my waiver discussion, TD Bank characterizes Hill's assignment assertions as fundamentally mistaken. It is TD Bank who insists that, because the manuscript is a work for hire, "TD Bank [as Commerce Bank's successor] is the work's statutory 'author' and sole copyright owner on day one and no transfer to TD Bank is required." (Appellee's Brief at 37 (citation omitted).) Where a work is made for hire, "the employer ... is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights comprised in the copyright." § 201(b). In contrast, a transfer or assignment implicates "the conveyance" (as § 204(a) puts it) of the owner's interest to another. A "work for hire" characterization thereby indicates that the employer has been the exclusive copyright owner from the very beginning.
 
 Nimmer
 
 does state that an agreement whereby works prepared by the employee but not prepared within the scope of employment are deemed to be works made for hire "may be regarded as the equivalent of a simple transfer of copyright from the employee to the employer." 1
 
 Nimmer on Copyright
 
 § 5.03[B][1][b][ii]. But the treatise does not provide any further explanation, and it immediately qualifies the statement itself by pointing to additional differences between a transfer and a work for hire,
 

 id.
 

 ("but will not trigger the various other legal consequences that flow from the status of a 'for hire' work" (footnote omitted)). (
 
 See, e.g.
 
 , Majority Opinion at 272-73 & n.7 (pointing out that work's status determines duration of copyright, author retains certain non-waivable rights to cancel transfer after 35-40 years and perhaps waivable moral rights in proper attribution, and creator of work for hire lacks such rights).) In any event, the specific letter at issue here still fails to manifest "an unmistakable intent to effect a present transfer" of Hill's copyright interest (
 
 id.
 
 at 274).
 

 For the foregoing reasons, I would vacate the District Court's summary judgment disposition on the question of copyright ownership and remand for further proceedings.