*842 OPINION OF THE COURT
Diane A. Lebedeff, J.
The primary and previously unanswered question present here is whether, under New York City’s system of public financing of local election campaigns, a candidate and committee benefiting from public matching funds may be sued for the return of public funds where they utterly refuse to document that public funds were used for campaign purposes.[1] For reasons set forth below, the court finds that the governing legislation incorporates a basic obligation of candidates and committees to show that the public’s tax dollars were put to the public’s intended use, enforceable on contract principles by a suit for recoupment on the facts presented. Two subsidiary issues involve civil penalties, both those already administratively imposed and those requested herein.[2]
Plaintiff New York City Campaign Finance Board moves for summary judgment on its complaint seeking relief against Gary D. Snyder and his election committee, Elect Gary Snyder (the Committee, of which Snyder was treasurer). Snyder and the Committee cross-move for the dismissal of the claims raised against them.
As a representative of the Libertarian Party in the general election of November of 2001, Snyder ran as a candidate for a position on the City Council covering District 6, which embraces the West Side of Manhattan from West 55th Street to West 96th Street. Snyder and his Committee enrolled in the New York City Campaign Finance Program and the Committee received *843 $19,124 in public matching funds. Snyder, a business analyst, ran on the Libertarian Party’s philosophy of “socially tolerant/ fiscally conservative” and asserted that “the money we pay to government” serves to “redistribute wealth from the politically-unconnected to the politically-connected to keep the politicians in power,” expending approximately $40 of public funds for each of the reported 478 votes he received; he lost to Gail A. Brewer, a particularly well-credentialed Democrat, who garnered over 34,000 votes.[3]
The Board staff followed a regular administrative course of collecting financial reports, reviewing the reports through its administrative audit process, and requesting Snyder and the Committee submit documentation. On two different occasions, the full Board found violations of applicable guidelines and imposed civil penalties upon the Committee.[4] By the end of the postelection administrative review process, the Committee failed to document campaign expenditures to the Board — which was requested to be done by the submission of bank statements and copies of cancelled checks — and a staff letter later demanded return by the Committee of the full grant of public matching funds of $19,124. Thereafter, this suit was commenced, with the Board seeking recoupment of public funds, payment of the as *844 sessed civil penalties, and the imposition of a $10,000 civil penalty by the court.
The Recoupment Claim
The Board requests a judgment for all public matching funds from Snyder and his Committee on the basis that the campaign has not provided to the Board copies of bank statements and cancelled checks, thereby refusing to demonstrate the actual use of campaign funds, including public funds, for proper campaign purposes. These factual claims are not denied by the candidate or the Committee.
Two questions must be answered to determine if this specialized administrative agency is permitted to sue upon a plenary claim for recoupment. The first involves the candidate’s objection that a candidate cannot be subjected to personal liability and the second is whether this specific claim first must proceed through the administrative review process.
As to a candidate’s personal liability, the court finds sufficient support for a straightforward claim against a candidate based upon a contract standard on the facts present here. The legislative expectation that a participating candidate would comply with a basic obligation of accountability is set out as part of the legislative intent and findings (Local Law No. 69 [1990] of the City of New York § 1 [“The council intends . . . (to) mak(e) public funds available to candidates for municipal office . . . who abide by reasonable requirements for campaign financing disclosure and record-keeping” (emphasis added)]). The statutory expression of this requirement is incorporated in the definition of candidates eligible to receive public funds (Administrative Code § 3-703 [1] [c] [eligibility limited to those who “choose to participate ... by filing a written certification . . . which sets forth his or her acceptance of an(d) agreement to comply with the terms and conditions for the provision of such funds”]). Further, eligible candidates are subject to the clear obligation that they “must . . . furnish . . . documentation and other proof of compliance” as required by the Board (Administrative Code § 3-703 [1] [d] [emphasis added]).
Recognizing that “[t]he starting point in any case of statutory interpretation must, of course, always be the language itself, giving effect to its plain meaning” (American Tr. Ins. Co. v Sartor, 3 NY3d 71, 76 [2004]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]), the legislation supports the finding that a contract-based obligation is incorporated into *845 the Campaign Finance Act. The court is not amending the statute by adding words that are not there (American Tr. Ins. Co. v Sartor, supra; People v Gersewitz, 294 NY 163, 169 [1945], cert dismissed 326 US 687 [1945] [“The court has no power to supply even an inadvertent omission of the Legislature”]).
In this case, the individual defendant, as candidate and treasurer of the Committee, signed the required written certification agreeing to comply with the Campaign Finance Act, the Campaign Finance Board Rules, and the Campaign Finance Board administrative procedures. He received public funds by reason of his undertaking, rendering his agreement contractual. Given a contract-based obligation, it also then follows that a signatory is subject to the obligation of good faith and fair dealing, because “[i]n New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. This covenant . . . encompass [es] any promises which a reasonable person in the position of the promisee would be justified in understanding were included” (511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002] [internal quotation marks and citations omitted]). And, as indicated by the fact that this case represents the only reported instance of a total failure to supply documentation, there is no reason to doubt that participants in the New York City Campaign Finance Program do understand that the quid pro quo for receiving public funds is accounting to the Campaign Finance Board for campaign funds and basic compliance with Board requirements.
As to protests regarding personal liability of a candidate or others related to a campaign, the law can and does impose such liability where it is supported by the facts. It is simply not true that personal financial liability is foreign to campaign law and can never be imposed (compare Karl Rove & Co. v Thornburgh, 39 F3d 1273 [5th Cir 1994] [senatorial candidate held responsible for authorized campaign costs], with Richmond Adv./Reinhold Assoc. v Del Guidice, 66 AD2d 701 [1st Dept 1978] [campaign committee members found not personally liable for advertising costs on record presented]).
As to the second issue, a possible limitation of the conclusion reached above might arise where the Board’s statutorily defined procedures and remedies are applicable. The test which this court adopts as proper is inquiring whether the Legislature has “allocated [action] to an administrative body [and] such intent is ‘fairly discernible in the statutory scheme’ ” (Thunder Basin Coal Co. v Reich, 510 US 200, 207 [1994], quoting Block v Com *846 munity Nutrition Institute, 467 US 340, 351 [1984], and Association of Data Processing Service Organizations, Inc. v Camp, 397 US 150, 157 [1970]).
Here, the Campaign Finance Act commits to administrative action two types of matters. One is the imposition of civil penalties which cannot exceed $10,000 (Administrative Code § 3-711 [1] [candidates, treasurers, and others may “be subject to a civil penalty in an amount not in excess of ten thousand dollars”]). The maximum amount of $10,000 is far below grants given to even minor party candidates with little expectation of being successful in an election, such as the grant here of $19,124, and no logical argument can be made that the civil penalty procedures or the amounts bear a relation to recoupment.
The second subject committed to the administrative arena are certain statutorily defined bases for recoupment, which require an accounting determination by the Board and are necessarily contingent upon a campaign’s submission of at least some documentation (see both provisions relating to Board audit functions: Administrative Code § 3-710 [2] [b] [imposing repayment obligation on a “committee” when Board affirmatively determines funds used for other than “qualified campaign expenditures”]; [2] [c] [Board can hold both “candidate and committee(s)” obligated to repay the amount by which “the total of contributions, other receipts, and payments from the fund . . . exceed the total campaign expenditures of such candidate and committee(s)”]). These remedies illustrate that the Campaign Finance Act allocates to the Board specific reporting and accounting issues which require administrative expertise (compare Sierra Club v United States Army Corps of Engrs., 772 F2d 1043, 1051 [2d Cir 1985] [“Fact-finding by trained and specialized administrators ... is now firmly established” for issues “reserved to executive expertise” and requiring “expert discretion”]).[5]
Against this background, the court is satisfied — where there is a complete refusal to submit backup documentation — that the issue is not remediable by a civil penalty, is not suited to a board audit procedure, calls for no exercise of administrative judgment or discretion, and is the sort of “did s/he or didn’t s/he” issue appropriate for court action (see Abiele Contr. v New York City School Constr. Auth., 91 NY2d 1, 12 [1997] [simple *847 breach of contract claim suitable for submission to court]). Accordingly, it is held that the Campaign Finance Act neither offers a safe harbor to a rogue candidate or campaign committee unwilling to document how public funds were expended nor bars the Campaign Finance Board from securing a return of public funds by plenary action in an appropriate case.
However, this conclusion must be put in proper perspective. First, many of the facts referenced here were claimed to be true as of 2003 and — with due recognition that the possible staleness of the factual record is not the fault of either party — the court wishes to be assured that there have been no changes in circumstances from those described before it reaches a final determination of liability and the amount of damages. Second, given that this decision is the first to rule upon this issue, the court determines it is appropriate to provide defendants one last opportunity to produce the records before such final determination. Third, if the failure to comply here were something less than outright refusal to provide documentation, this decision should not be read to bar an available argument that the matter is first subject to an administrative accounting determination.
Based on the foregoing, the defendants’ arguments are found insufficient and the request for summary judgment in their favor is denied. The Board’s request for summary judgment is restored to the court’s calendar for the purpose set forth above.
The Administrative Penalties Claims
The Board requests judgment based upon two assessed administrative civil penalties. The Committee’s sole objection is that the Board determinations imposing fines upon the Committee were made in violation of New York City Charter § 1119 (1), which requires that an official decision be made by a majority vote of the body. No specific deficiency having been identified by defendants, any arguments based upon the Charter provision are found wanting. Given the record, judgment against the Committee for such penalties is granted.
The Board also asks for a judgment against the candidate for such fines. It takes the position that the candidate is foreclosed from objecting to this request, arguing that objections to the fines imposed must be raised in a CPLR article 78 proceeding brought within four months after the Board’s determinations (CPLR 217; but see Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352, 358 [1978] [as relevant to *848 application of such rule, “the courts should resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his day in court”], quoting Matter of Castaways Motel v Schuyler, 24 NY2d 120, 126-127 [1969]).
The candidate counters that no fine was imposed upon him by the Board and, therefore, he was not required to pursue an article 78 proceeding. Indeed, the Board determinations do not recite that such penalties were imposed upon the candidate personally. Absent a final Board order imposing a fine upon the candidate (Matter of Martin v Ronan, 44 NY2d 374, 380 [1978], rearg denied 45 NY2d 776 [1978] [“For a determination to be final ‘upon the petitioner’ it must be clear that the petitioner seeking review has been aggrieved by it”]; Matter of Essex County v Zagata, 91 NY2d 447, 453 [1998] [finality arises when “the decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury”]), and notification of an adverse final determination (Matter of Village of Westbury v Department of Transp. of State of N.Y., 75 NY2d 62, 72 [1989] [“A determination generally becomes binding when the aggrieved party is ‘notified’ ”]; Matter of Biondo v New York State Bd. of Parole, 60 NY2d 832, 834 [1983] [“fundamental fairness would seem to compel the conclusion that a petitioner should not be held to have been dilatory in challenging a determination of which he was not aware”]), the candidate had no reason to seek article 78 relief.
The supplementary information advanced regarding later letters stating that action would be taken against the candidate, including posting the candidate’s name on the Board’s Web site, are of no legal moment. These actions followed, and did not change, the underlying Board decisions and the notice they provided.
Accordingly, the court determines that the candidate is not barred from objecting to the claim for civil penalties. The candidate’s motion for summary judgment as to such claim is granted and these claims against the candidate are severed and dismissed without prejudice. The Board is not foreclosed hereby from placing the question of penalties to be assessed against the candidate on its agenda and, after proper notice to the candidate, *849 imposing penalties, consistent with the Administrative Code provisions.[6]
The Claim for a “Court-Imposed” Civil Penalty
The Board requests that the court itself impose a further civil penalty upon the candidate in several of the complaint’s causes of action. The City Council’s passage of a new section 3-710.5 to the Administrative Code has clarified that such civil penalties are to be imposed by Board action (Local Law No. 12 [2003] of the City of New York § 11 [eff Feb. 18, 2003] [“The board shall determine . . . (matters) for which the board may assess a civil penalty”]). Because the current statute does not permit the court to fix such a penalty, the court cannot do so (Wetzler v Roosevelt Raceway, 208 AD2d 120, 126 [1st Dept 1995] [“It is well settled that the imposition of a penalty is exclusively (governed by) the prerogative of the sovereign”]).
Absent an authorizing statute, granting this request would be inconsistent with the general American rule that parties bear their own costs in litigation and a party may not “recover damages for the amounts expended in the successful prosecution or defense of its rights” (Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 21-22 [1979]). No court rule is stated to be the basis for this request (see Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 6 [1986] [“ad hoc judicial decisions” are not a sound basis for imposing sanctions; sanctions rule subsequently adopted and now appears at 22 NYCRR subpart 130-1]).
In the interests of justice and judicial economy, pursuant to the authority granted by CPLR 3212 (b), the court searches the record and awards summary judgment to the defendants to the extent of severing and dismissing the claims contained in the pleading for court-imposed civil penalties to the extent not based upon Board determinations.
Conclusion
Given the difficulties which developed regarding the transfer of this matter to the Civil Court (CPLR 325 [d]) and the result *850 ing delayed presentation of a full set of motion papers, the motion and cross motion have been fully restored and leave to reargue is granted to the extent necessary. The motion and cross motion are granted to the extent set forth above and otherwise denied, with the exception that the branch of the Board’s motion seeking recoupment is restored to the court’s calendar.

. The New York City system for providing matching funds to participating campaigns is governed by the New York City Campaign Finance Act (Administrative Code of City of NY § 3-701 et seq.). The New York City Campaign Finance Program was first enacted by the New York City Council in 1988; it is administered by the New York City Campaign Finance Board (NY City Charter, ch 46, § 1052).
For a description of the New York City campaign finance system’s operation, which is regarded as a landmark program, see Nicole A. Gordon, The New York City Model: Essentials for Effective Campaign Finance Regulation (6 JL & Pol’y 79 [1997]), and, containing speeches delivered at a conference jointly sponsored by the New York City Campaign Finance Board and the Association of the Bar of the City of New York, From the Ground Up: Local Lessons For National Reform (27 Fordham Urb LJ 5 [1999]). A broad exploration of legal issues involved with public financing of election campaigns appears in an article by Richard Briffault, entitled Public Funding and Democratic Elections (148 U Pa L Rev 563 [1999]).

. These latter two legal issues are similar to those addressed in New York City Campaign Fin. Bd. v Perez (NYLJ, May 16, 2005, at 18, col 3 [Sup Ct, NY County, Lebedeff, J.]) on different and distinctive facts.

. See public records, accessed November 21, 2005, for the Campaign Finance Board 2001 General Election Guide, which appear at <http:// www.nyccfb.info/debates_vg/voter_guides/general_2001/cd_statements/ cd06_gsnyder.htm>, cached at <http://www.courts.state.ny.us/reporter/webdocs/ nye_campaign_finance_board_2001_voter_guides.htm>; New York City Board of Elections 2001 General Election Statement and Return of Votes, at 47-48, which appears at <http://vote.nyc.ny.us/pdf/results/2001/generalelection/ general2001.pdf>, cached at <http://www.courts.state.ny.us/reporter/webdocs/ general2001.pdf >; and New York City Council Web site information on Council Member Brewer, appearing at <http://www.nyccouncil.info/constituent/ member_details.cfm?con_id=28>, cached at <http://www.courts.state.ny.us/ reporter/webdocs/nyccouncil_info_nycc.htm>.

. Snyder and his Committee did not respond or appear at the Board meetings which considered the proposed findings of deficiencies. The first Board determination was dated September 5, 2002, and imposed civil penalties of $400; it recited a determination that “Elect Gary Snyder (the ‘Committee’) violated” the governing act by “failing to respond to requests for audit documentation.” The second Board determination was dated January 8, 2003, and imposed civil penalties of $3,440; it recited a determination that “Elect Gary Snyder (the ‘Committee’) violated” the governing act and rules by (1) not responding to a draft audit report, (2) not documenting a loan and its repayment, (3) filing a disclosure statement more than five months late, (4) filing a different disclosure statement four months late, (5) not providing bank statements and deposit slips, and (6) failing to report an in-kind contribution of petition expenses.

. The complaint’s references to certain provisions relevant to Board action are treated as surplusage. As both sides acknowledge, the instant recoupment was not presented to the full Board.

. Notwithstanding that the administrative determinations do not recite the personal imposition of fines, the candidate was notified that the Board could have taken that action (Matter of Block v Ambach, 73 NY2d 323, 332 [1989] [“It is axiomatic that due process . . . (requires) fair notice of the charges against him or her so that he or she may prepare and present an adequate defense and thereby have an opportunity to be heard”]).